## SMOOT v. CHECKETTS et al.

No. 2230. Decided June 14, 1912 (125 Pac. 412).

1. ACCORD AND SATISFACTION—LABOR CLAIMS—PAYMENT OF LESS THAN THE AMOUNT DUE. Where, on the abandonment of a building contract by the contractors, labor claimants demanded payment, and there was no agreement that they should release the owner or the contractors from liability, or that they should accept payment of one-third of their claims as a compromise or settlement, there being no dispute as to the amount due, the fact that they each received one-third of the amount due them, and in return executed a receipt to the owner for such amount "in full of all claims against" the owner for labor, was insufficient to establish an accord and satisfaction. (Page 214.)

2. ACCORD AND SATISFACTION—REQUISITES. When it is claimed that payment by the debtor of a sum less than is due to the creditor is a payment in full discharge of the entire amount due, a receipt acknowledging full payment is not controlling, but it must also appear that the payment was based on a sufficient independent consideration or on a compromise of a disputed or unliquidated claim. (Page 216.)

3. COMPOSITIONS WITH CREDITORS—WHAT CONSTITUTES—CONCLUSIVENESS. That labor claimants received from the owner of a building one-third of their claims on the abandonment of the contract

by the contractors did not release the owner from liability for the balance on the theory that such payment was in the nature of a composition agreement with creditors, in the absence of proof that the creditors agreed among themselves that each would receive the one-third payment in full payment or discharge of his entire claim.   (Page 216.)

4. MECHANICS' LIENS—LABOR CLAIMANTS—LIABILITY OF OWNER—STATUTES.   Comp. Laws 1907, sec. 1374, provides that the owner of a building under construction by contractors shall not make any payments before they become due under the contract, and, if made, they shall be treated as if not made so far as the rights of lien claimants are concerned.   Held, that such section was applicable to a case where the contractor abandoned his contract, and, where treating premature payments as not made, the owner had in his hands money applicable to labor claims, so that a payment made by the owner to labor claimants of one-third of the amount due to them could not discharge his liability for the balance on the theory that, where one not the debtor, and who is not legally or morally bound to pay, pays a sum less than the whole debt, and the creditor receives the lesser sum in discharge of the greater, he cannot maintain an action for the remainder; such principle being inapplicable. (Page 217.)

5. MECHANICS' LIENS—LABOR CLAIMS—LIABILITY OF OWNER—PAYMENT OF EXCESS OF CONTRACT PRICE.   That the owners of certain buildings under construction paid out money in excess of the contract price prior to the abandonment of the contract by the contractors was no defense to their liability for labor claims which were the proper subject of liens.   (Page 218.)

6. MECHANICS' LIENS—LABOR CLAIMS—PAYMENTS OTHER THAN IN CASH.   Comp. Laws 1907, sec. 1375, provides that as to all liens, except that of the contractor, the whole contract price shall be payable in money except as provided therein, and shall not be diminished by any indebtedness, offset, or counterclaim in favor of the owner and against the contractor, except when the owner has contracted to pay otherwise than in cash, in which case the owner shall post and maintain at a conspicuous place on the premises a statement of the terms and conditions of the contract, before materials are furnished or labor is performed, and when so posted shall give notice to all parties interested of the terms and conditions of the contract.   Held, that the owner, as against labor claimants, could pay a part of the contract price in a medium other than money only on compliance with the provisions of such section, and that the burden as against such claimants was on the owner to show such compliance.   (Page 218.)

7. MECHANICS' LIENS—LABORER'S LIEN—ASSIGNMENT. Under Comp. Laws 1907, sec. 1396, providing that all liens under the chapter relating to mechanics' and laborers' liens shall be assignable as other choses in action, and that the assignee may sue thereon in his own name, the right to perfect a laborer's lien is assignable, authorizing the assignee to take the necessary steps to establish the lien. (Page 219.)

8. APPEAL AND ERROR—REVIEW—CONFLICTING EVIDENCE. Findings based on conflicting evidence will not be reversed on appeal unless it is clear from the evidence that the findings are wrong. (Page 220.)

STRAUP, J., dissenting.

APPEAL from District Court, Second District; *Hon. J. A. Howell*, Judge.

Action by William S. Smoot against Joseph Checketts and another, doing business under the name of Checketts & Bradeson, and others.

Judgment for plaintiff. Defendants appeal.

AFFIRMED.

*A. G. Horn* for appellants.

*Agee & McCracken, J. N. Kimball* and *R. S. Farnsworth* for respondent.

FRICK, C. J.

The respondent, William S. Smoot, for himself and as the assignee of other lien claimants, commenced this action to foreclose certain mechanics' liens. Ray A. Ross filed a cross-complaint, but, for the purposes of this opinion, he will be treated the same as though he were an assignee of the respondent Smoot. The district court found the issues in favor of the lien claimants and ordered that the premises against which the liens were claimed be sold.

The controlling facts, stated as briefly as possible, are: That Checketts & Bradeson, as copartners, and hereafter

called contractors, in April, 1908, entered into a contract
with the Inter-Mountain Fair Association, a corporation,
hereafter styled association, whereby said contractors agreed
to furnish the labor and material to construct and complete
certain buildings, and also to remove and repair certain other
buildings and structures for said association, for the agreed
price of $2,839, payable on and before the completion of
the buildings and structures aforesaid. Said contractors be-
came financially embarrassed, and some time in the latter
part of July, 1908, before completing the buildings and struc-
tures aforesaid, abandoned their contract. Prior to said
abandonment, said contractors had, however, contracted
debts and obligations for material used in and for labor per-
formed upon said buildings and structures. The controversy
in this case is limited to the claims for labor performed as
aforesaid.

One of the principal questions presented for determina-
tion arose out of the following circumstances, namely:

A short time after the contractors had abandoned their
contract, a number of the laborers who had been employed
by said contractors, and who, under such employment, had
performed labor upon the buildings and structures aforesaid,
met with some of the officers of the association and
demanded payment for their labor, and, in case pay-
ment were not made, they threatened to file liens un-
der the statutes of this state against said buildings and struc-
tures. After some discussion, the association paid the claim-
ants about one-third of what was due them for labor, and
took from each of them a receipt in the following form:
"Ogden, Utah, July 31, 1908. Received of Inter-Mountain
Fair Association —— dollars, in full of all claims against
the above association for labor." The amount that was paid
to each claimant was inserted in his receipt, and each one
signed a separate form. In its answer, the association plead-
ed the foregoing payment as an accord, satisfaction, and set-
tlement of all claims. The claimants, however, denied such
compromise or settlement. Upon that issue the court found
that, when the foregoing payments were made and the re-

ceipts executed and delivered, "there was in fact no agreement that either of said parties would release the said defendant (association), or the defendants Checketts & Bradeson (the contractors) from liability to them, and, further, that there was no dispute at the time of said payments as to the amounts then due and owing to the said plaintiff" or his assignors, including Ross. The court further found that there was no consideration to support the alleged accord and satisfaction, and further found that the payments made as aforesaid were made out of money that was due and owing by said association to said contractors. The court further found that, although said contractors had abandoned said contract, notwithstanding that fact "there was sufficient money remaining in its (the association's) hands of the contract price of the work to be performed under said contract after the payment for the completion of said work to pay the plaintiff and his assignors" together with all other claims for material. Upon these facts the court found, as a conclusion of law, that there was neither a compromise settlement nor an accord and satisfaction of said claims.

It is now insisted by the attorney for the association that the court erred in its findings as aforesaid. From the facts as found, which, in our judgment, are sustained by the evidence, the payments relied on by the association do not constitute an accord and satisfaction, nor did the transaction between the claimants and the officers of the association amount to a compromise and settlement of unliquidated or disputed claims. There was no dispute whatever between the officers of the association and the labor claimants with respect to the amount that was due to any one of them from the contractors. Neither was there any question with regard to whether the claimants, as a matter of law, were entitled to file liens against the buildings and structures of the association for the full amount of their claims. The mere fact that, under such circumstances, the claimants executed receipts in full when they had in fact received only about one-third of the amounts then due them from the contractors for labor is of slight, if any, importance. As to whether the receipt of a less sum

will discharge a greater one does not depend upon the form of the receipt that is given.

When it is claimed that the payment by the debtor of a sum of money less than is due and owing to the creditor is a payment in full discharge of the entire amount due, a receipt acknowledging full payment standing alone is not controlling. If such a payment is based upon a sufficient independent consideration, or upon a compromise of a disputed or an unliquidated claim, and under such circumstances the lesser sum is received as payment in discharge of the larger one, the payment is binding upon the creditor. (*Barnum v. Green,* 13 Colo. App. 258, 259, 57 Pac. 757; *Johnson v. Simmons,* 76 Minn. 34, 78 N. W. 863; *Canadian Fed. Co. v. McShane,* 80 Neb. 551, 114 N. W. 594, 14 L. R. A. (N. S.) 443, 127 Am. St. Rep. 791; *Farmers' & Mechanics' Life Ass'n v. Caine,* 224 Ill. 599, 79 N. E. 956; *Prudential Ins. Co. v. Cottongham,* 103 Md. 319, 63 Atl. 359; *Ness v. Minnesota & Colo. Co.,* 87 Minn. 413, 92 N. W. 333.)

In the foregoing cases, the dictrine of what constitutes a sufficient consideration for the discharge of a debt then due by the payment of an amount less than the whole debt is fully illustrated. Under the authority of every one of the cases referred to above, with many others which might be cited, the payment in the case at bar did not amount to either a compromise of a disputed claim or an accord and satisfaction.

Nor is the contention of counsel for the association tenable that the payments made were in the nature of a composition agreement with creditors, and hence are binding upon the lien claimants, as constituting a part of the creditors of the contractors. It is undoubtedly the law that, where all or a part of the creditors of a particular debtor agree among themselves that each will receive from the debtor, or out of his property or funds, a certain amount or per cent. of the creditor's claim in full payment or discharge of his entire claim, such an agreement is binding upon all the creditors who are parties to the same. In order that such an agreement be binding, however, there must

be an agreement or understanding to the effect just stated by the creditors among or between themselves. In other words, there must be mutuality among the creditors in order to bind any of them. In the cases of *Gage v. De Courcey,* 68 N. H. 579, 41 Atl. 183; *Bartlett v. Woodworth-Mason Co.,* 69 N. H. 316, 41 Atl. 264, and *Sage v. Valentine,* 23 Minn. 102, the principles now under consideration are clearly illustrated and applied. The facts in the case at bar do not bring it within the principles aforesaid.

Counsel, however, insist that, under the facts, the case at bar falls within the doctrine that where one not the debtor, and who is not under any legal or moral obligation to pay the debt, does pay a sum less than the whole debt, and the creditor agrees and does receive the lesser sum in discharge of the greater one, the creditor is bound and cannot thereafter sustain an action for the remainder. This doctrine is clearly stated by Mr. Justice Collins in the case of *Clark v. Abbott,* 53 Minn. 88, 55 N. W. 542, 39 Am. St. Rep. 577. It is also applied in the case of *Gordon v. Moore,* 44 Ark. 349, 51 Am. Rep. 606. The foregoing doctrine has and can have no application as between material and laboring men and the owner of buildings and structures under our mechanics' lien statute. The owner of the building and the material or laboring men are not strangers within the purview of the foregoing doctrine. Under our statute (C. L. 1907, sec. 1374), the association had no authority to make any payments before such payments were due in accordance with the terms of the contract, and, if it made any payments, they, under the statute, had to be treated "as if not made," so far as the rights of the respondent and his assignors are concerned. The statute is applicable although, as in this case, the contractor "may thereafter abandon his contract."

As we have seen, the contract price was not payable unless and until the structures contracted to be erected were completed. We have also called attention to the fact that Checketts & Bradeson, the contractors, never completed their contract, but abandoned the structures before completing them. The provisions of section 1374, *supra,* therefore became ap-

plicable, and hence the court was right, as a matter of law, when it found that the association had a sufficient amount of the contract price in its hands to pay the respondent and his assignors, because, under the statute, any payments that the association may have made under the undisputed facts were by the statute "deemed as if not made," so far as the rights of lien claimants were concerned.

What has been said also answers the claim that the association paid out money in excess of the contract price. If this was done, it was contrary to the spirit of our lien laws, and cannot be urged as a reason why respondent and his assignors should not receive pay for the labor they performed. So long as the right to liens existed, the association had no right whatever to prefer any claimant above another, and, if it did so before the time for filing liens had elapsed, it cannot complain because the law compels it to treat all claimants alike. Moreover, it appears in this case that the association was permitted to pay a part of the contract price in a medium other than money.

This could only be done so as to affect the respondent and his assignors if the provisions of section 1375 were complied with by the association. The burden of showing that fact as against these claimants was upon the association, and there is nothing in the record to show that said section was complied with. This is important only for the purpose of showing that the excessive payments that are claimed by the association are entirely immaterial in this case under the facts as found by the court.

It is further asserted that the court erred in allowing attorney's fees. Comp. Laws 1907, sec. 1400, expressly provides that, in actions to foreclose mechanic's liens, the successful party shall be entitled to recover an attorney's fee to be fixed by the court not to exceed twenty five dollars. The amount allowed by the court not being in excess of the amount permitted by statute, and no other error being claimed in this regard, the assignment must be overruled.

From the record it is made to appear that one Rupp was employed by the contractors, and that he performed labor

upon the building and structures in question; that he did not himself make oath to his claim and file the same, but that, before the notice of lien was filed, he had assigned his claim for labor to the cross-complainant Ross. Ross, after the assignment to him, duly made oath to the claim and filed the same as required by our statute. Counsel for the association vigorously assails the ruling of the trial court in allowing and enforcing the lien thus claimed by Ross. Counsel concedes that the original claimant, after perfecting his lien under the statute, might assign the same, and that his assignee may enforce it, but it is contended that the mere claim—that is, a mere inchoate right to a lien—is not assignable. In other words, counsel contends that the original claimant must perfect the lien under the statute, and that his assignee cannot perfect the lien. A number of cases are cited which sustain counsel's contention. In 27 Cyc. 255, the law upon the subject, and which is to the contrary of counsel's citations, is stated in the following language:

"In some jurisdictions it is held that an inchoate mechanic's lien may be assigned so as to invest the assignee with the right to perfect and enforce the same."

In support of the foregoing statement, cases are cited from Alabama, Colorado, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Rhode Island, and South Dakota. See, also, Boisot on Mechanics' Liens, sec. 10; Phillips on Mechanics' Liens, secs. 54, 54a, 55. We are aware that the Supreme Court of California, in *Mills v. La Verne Land Co.*, 97 Cal. 254, 32 Pac. 169, 33 Am. St. Rep. 168, has arrived at a contrary conclusion to that stated in Cyc. The case, however, is, to some extent at least, based upon a California statute. From an examination of the cases cited by the Supreme Court of California, it develops that some of the decisions relied on by the California Supreme Court have since then been modified, if not overruled. Iowa in early cases held with California, and in a later decision (*Peatman v. Centerville Light, etc. Co.*, 105

Iowa, 1, 74 N. W. 689, 67 Am. St. Rep. 276), that court
supports the text quoted from Cyc., *supra.* The question is
also fully discussed by the Supreme Court of Minnesota in
*Kinney v. Duluth Ore Co.,* 58 Minn. 455, 60 N. W. 23, 49
Am. St. Rep. 528. It is there held that even in the absence
of a statute, in view of the general provisions of the Code
with respect to permitting assignments, and in view of the
liberal provisions of the lien statute and its purpose, the in-
choate right to a lien is assignable. Our statute (Comp. Laws
1907, sec. 1396), however, specifically authorizes the assign-
ment of liens and gives the assignee the right to enforce the
same in his own name. We think, when that section is con-
sidered in connection with all of the other provisions of our
lien law, that a reasonable construction requires us to hold
that the court committed no error in allowing and enforcing
the lien in question. We are of the opinion that, under our
statute, the right to perfect a lien is clearly assignable.

It is further asserted that the district court erred in allow-
ing a lien for labor for which the statute does not authorize
a lien. The record discloses that one of the assignors per-
formed a few days' labor for which there may be some doubt
whether the statute gives a lien or not. In view, however,
that the construction of the statute in this regard is of grave
importance to all lien claimants, and that counsel for neither
side has thoroughly discussed the question nor cited any au-
thorities, and for the further reason that the amount involved
is small and that, in view of the finding of the court, the as-
sociation is not injured by the court's ruling, we have less
hesitancy than we otherwise would have in refraining from
passing upon the question at this time.

The contention that the findings are not sustained by the
evidence cannot prevail. This contention can only prevail
in cases where it is clear from the evidence that the court's
findings are wrong. Such is not the case here. On most
points the evidence is, to say the least, in sharp con-
flict, and, where such is not the case, it is not clear
that the findings are not right. In cases where the
evidence is conflicting, we are just as likely to be wrong as

to be right by attempting to interfere with the court's findings of fact at long range. In view of the whole record, we are of the opinion that interference in this case is not justified. In this connection it should also be remembered that, although the association did pay more than the contract price, yet it paid no more than the labor and material were worth. It therefore paid only for what it actually obtained. If it was damaged in anyway by reason of the excessive payments, it, under the circumstances, should look to the contractors, who alone are responsible for the predicament in which it was placed. By this we do not mean that the owner of the building or structure can be required to pay more than the contract price in case he complies with the provisions of the statute, but if he does not comply with them, and is required to pay more, he has no legal right to complain.

The assignment that one of the assignees had been paid by the contractors must likewise fail. The agreement between the contractors and the assignor amounted to no more than an agreement that the assignor should be paid in a particular manner. The agreement, however, was not fulfilled by the contractors, and the assignor received no pay for his labor. This left the question precisely the same as though the assignor had been promised payment in cash by the contractors, but they did not redeem their promise.

The judgment is affirmed, with costs to respondent.

McCARTY, J., concurs.

STRAUP, J. (dissenting.)

I dissent. The evidence shows: (1) The fair association made two written contracts with Checketts & Bradeson to construct and repair buildings, etc., upon an agreed price of $2,839. It also entered into another agreement with them for extras at an agreed price of $235.75. That made a total contract price of $3,074.75. It paid to them and for their use and benefit $2,935.50. It paid out $146.69 for labor and material to finish the contract. That was a total of $3,-083.19, or more than the contract price. In addition to

that it paid $147 to the plaintiff and his assignors. (2) Checketts & Bradeson became insolvent and abandoned the *work before* it was completed. The plaintiff and his assignors were in their employ and had done labor for them on the work. When the contractors abandoned the work, they owed plaintiff his assignors $440. (3) They demanded payment from the fair association of the amounts due them, and threatened to file liens if their claims were not paid. There was no dispute as to the amounts due them from the contractors. There, however, was a controversy as to the right of plaintiff and his assignors to file a lien or to look to the fair association for payment; it contending in that regard that it did not owe the contractors anything, at least not an amount sufficient to pay the claims. It also asserted that the contractors owed other claims and demands for material and labor, the amounts of which then were uncertain and unpaid, and that the association would be to extra expense, the amount of which was then also uncertain, to complete the work according to contract, due to the contractors' default and breach. (4) After two conferences on different days between the fair association and the plaintiff and his assignors, the former agreed to pay the latter one-third of their claims if they would release it of all claims and demands and forego their right to file a lien. This was agreed to and accepted by the plaintiff and his assignors. The fair association accordingly paid them one-third of their claims, amounting in the aggregate to $147, and took a receipt signed by each which reads, "Received of Inter-Mountain Fair Association," the amount paid to each being specified, "In full of all claims against the above association for labor." (5) Thereafter the plaintiff and his assignors filed liens for the balance of their claims which the assignors subsequently assigned to plaintiff who brought this action.

The agreement between the fair association and the plaintiff and his assignors and the giving of the receipts were testified to by the directors and officers of the fair association. The receipts themselves were put in evidence. Their execution and delivery are undisputed. They are not assailed

on the ground of fraud, misrepresentation, or mistake. While a receipt, so far as it partakes of the character of a mere receipt and not a contract, may be varied or controlled by parol evidence, nevertheless it is a written admission made by the party signing it of the fact or facts which it recites. Ordinarily one does not make an admission of facts against interest unless true. Such an admission ought not lightly to be disregarded. The receipts strongly corroborate the testimony of the officers and directors of the association, and are at war with the claim now made by the plaintiff and his assignors.

The testimony of the officers and directors is also corroborated by that of Ross, the counterclaimant, a witness for the plaintiff. He testified that he was present at the conferences between the plaintiff and his assignors and the fair association and when the receipts were signed, and the money paid by the association to himself and to the plaintiff and his assignors, and that the association claimed that it did not have money enough to pay "us in full.". He further testified: "We had been talking about filing a mechanic's lien. While we were talking, they called our attention to several things in the contract which hadn't been completed. At first the association refused to pay anything, and they refused to recognize any liability on their part towards us, and we stated that we had a right to put a mechanic's lien, and if no settlement was made we would do so, and they told us, if we would make some concession and agree not to file a lien, that they would pay us some portion of our claim, and we should make them a receipt in full. We agreed to this later on. They told us no settlement would be made unless we came to that agreement and we finally did so, accepting the money and signing the receipts, and they told us then that this settlement with the association would not release Checketts & Bradeson from the balance of our claims." He further testified that the amount so agreed upon was one-third of their claims, and that, in accordance with the agreement, that amount was paid, and the receipts given.

The only evidence to the contrary is this: One of the officers of the fair association, a witness for the defendants, on cross-examination was asked if, at the time of the giving of the receipts, he did not say to the plaintiff and his assignors that "the receipt was a mere matter of form; that he did not intend to beat them out of anything that was due them; and that it would in no way affect their claims." He denied making any such statement. On rebuttal the plaintiff and some of the assignors were called, and, in response to leading questions put to them if such a statement was made by such officer at that time, they answered in the affirmative. But neither of them denied the agreement between the fair association and the claimants and the giving of the receipts as testified to by Ross and the directors and officers of the fair association. All they did by way of evidence was an attempt to impeach one of the officers of the association in respect of a statement made by him as to the legal effect of the receipts, that they were "a mere matter of form," etc.

I think the agreement and the payment of the money thereunder, and the giving of the receipts, constituted a settlement between the fair association and the claimants. It was so pleaded in defense. It was not assailed on the ground of fraud, misrepresentation, or mistake, or that it was not fairly entered into, nor is there any evidence to dispute the fact that the agreement was made and that the terms thereof were as testified to by Ross and the officers of the association. I also think that the agreement was founded upon a good consideration. This is not a case where one party owes another an undisputed and liquidated amount which was settled for less upon no independent or other consideration. Here the defaulting contractors were primarily liable to the claimants. The fair association was not at all liable to them. Its property upon which the work was done was secondarily and only conditionally liable. That liability was not in excess of the contract price nor beyond the moneys in the hands of the association and unpaid to the contractors.

The great weight of the evidence shows that the fair association had paid the contractors the full amount of the con-

tract price. The work was uncompleted when the contractors abandoned their contract. At the time of the settlement, it was uncertain as to the reasonable cost to complete it. It also was then uncertain as to the amount of claims, other than those of plaintiff and his assignors, for labor and material then owing and unpaid by the contractors. Under such circumstances, the fair association agreed with the plaintiff and his assignors to pay them one-third of their claims if they would release it of all claims and demands and forego the right to claim and file a lien upon its property. They agreed to that. The amount so agreed upon was paid to them. As soon as they received it and gave their receipts in full, they ignored their agreement and filed liens. The fair association, including the amounts paid to plaintiff and his assignors, has already paid $3,230, or $391 more than the contract price, yet the judgment of the court below not only released the plaintiff and his assignors from the settlement made by them with the fair association, but required it to pay substantially $581.10 more to the plaintiff and his assignors, including the counterclaimant, else its property upon which the work was done to be sold in payment thereof.

I think the judgment as against the fair association wrong, and therefore dissent.