# NOWLIN v. MELVIN.

No. 4382.   Opinion Filed March 23, 1915.

(147 Pac. 307.)

1.  **DEEDS—Gift—Evidence.** In a suit in equity commenced by a father to set aside a deed conveying certain real estate owned by him as a gift to one of his daughters, who with her children had been living with him upon the land for several years prior to the execution of the deed, and depended upon him for support, upon the ground of fraud, duress, undue influence, and mental incapacity of the grantor, evidence to the effect that other absent adult children of the grantor were financially better off than the grantee was admissible as tending to sustain and corroborate and make more probable the transaction between the plaintiff and defendant, as testified to by the latter.

2.  **SUFFICIENCY OF INSTRUCTIONS.** Instructions given examined and held to state the law applicable to the case with reasonable fullness and substantial accuracy.

3.  **APPEAL AND ERROR—Harmless Error—Instructions—Evidence.** By virtue of sections 5017 and 6005, Rev. Laws 1910, misdirection of the jury or the improper admission or rejection of evidence by the trial court cannot be held to be reversible error, unless in the opinion of the Supreme Court, after an examination of the entire record, it appears that such error has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitution or statutory right.

4.  **TRIAL—Trial by Court—Waiver—Equity.** Where a party to a suit, formerly cognizable only in equity, has a right to insist on a trial by the court, after he has voluntarily accepted a trial by jury, he cannot afterward insist upon having the facts passed upon by the court.

5.  **APPEAL AND ERROR—Presentation Below—Jury Trial.** The objection that a party had a jury trial to which he was not entitled cannot be raised for the first time on appeal.

(Syllabus by the Court.)

*Error from District Court, Comanche County;*

*Frank M. Bailey, Judge.*

Suit by Samuel Nowlin against Sadie L. Melvin. Judgment for defendant, and plaintiff brings error. Affirmed.

*B. M. Parmenter* and *J. A. Lenertz,* for plaintiff in error.

*Hamon & Ellis,* for defendant in error.

KANE, C. J.   This was a suit in equity commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, to set aside a certain warranty deed executed by him conveying a certain tract of land to the defendant, upon the ground of fraud, duress, and undue influence of the defendant and the mental incapacity of the grantor to execute such a conveyance.   The consideration for the transfer, as stated in the deed, was "one dollar and natural love and affection."   Upon trial to a jury a general verdict in favor of the defendant was returned, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

It seems that the plaintiff and defendant were father and daughter, and that they and the four children of the daughter resided together upon the land in controversy for several years prior to the conveyance; the daughter keeping house for the father.   The father settled upon the land as a homestead at the opening of the Kiowa and Comanche country; and, prior to the time his daughter and her children took up their residence with him, he lived alone in a little one-room house upon the land.

The record before us is voluminous, many witness testifying on either side; but, from a careful examination of the testimony of the principal parties (the father and daughter), it appears that they lived together upon the farm without incident beyond the ordinary, and happily enough, from the time the daughter took up her residence thereon until a short time after the execution of the deed involved herein.   Up to this point all of the members of the family (father, daughter, and her four children) seem to have lived and worked together upon the farm in good

faith for the common good of all and in comparative peace. Shortly after the execution of the deed the father became very ill, and continued in this condition for several months. During this illness two other daughters visited him, and upon his convalescence one of them, a Mrs. Thelin, took her father to live with her at Albuquerque, N. M. After the father, who at that time, and at the time the deed was executed, was about 70 years of age, recovered his health, he and Mrs. Thelin returned to Lawton, the county seat of the county wherein the land in controversy is situated, and the father commenced this suit.

In the original petition filed in the cause all the personal property accumulated by father and daughter during their residence upon the farm was involved, but subsequently the petition was amended by omitting all reference to the personal property; the general allegations of fraud, duress, undue influence, incompetency, etc., remaining practically the same.

Whilst there are a great many errors assigned, counsel for plaintiff in error in their brief seem to confine themselves to the argument of four propositions which may be stated as follows:   (1) Error of the trial court in admitting testimony as to the financial condition of other members of the plaintiff's family; (2) error of the trial court in instructing the jury upon the question of duress; (3) error of the trial court in receiving the general verdict of the jury and entering judgment thereon, this being a suit formerly cognizable only in equity, wherein trial by jury, except as to specific questions of fact, when submitted by the court, is not permissible; (4) error of the trial court in giving the jury instruction No. 13.   The evidence touching the financial standing of the other daughters of the plaintiff was offered upon the theory that, as it tended to show they were all better off financially than the defendant, it corroborated

and made more probable her statement as to the transactions between herself and her father. There seems to be authority sustaining this view. In *Wambold v. Vicks,* 50 Wis. 456, 7 N. W. 438, it was held that:

"What was said, as well as what was done, on the occasion of the presentation or gift, were part of the *res gestae* and not hearsay, and the general circumstances of the family at the time of the pretended purchase and gift were proper to be shown, to sustain and corroborate and make probable the transactions, as testified to by the plaintiff and her brother, and therefore were not irrelevant."

On the assignments of error questioning the correctness of the instructions given by the trial court, it is sufficient to say that we have examined the instructions given, and are of the opinion that, as a whole, they state the law applicable to the case with reasonable fullness and substantial accuracy. But we may assume that the court committed error in permitting the introduction of the evidence complained of and in giving the instructions objected to by plaintiff, and yet, under the state of the record before us, we would not be justified in reversing the judgment of the court below. In our judgment, there was absolutely no evidence introduced at the trial tending to show fraud or duress on the part of the defendant, and very little, if any, to show undue influence, or that the plaintiff was mentally incapacitated at or prior to the time the deed was executed. The petition itself is general, vague, and indefinite in its statement of facts. Whilst it is replete in vigorous declamation, it is deficient in that clear and concise statement of the facts constituting the plaintiff's cause of action which, under the Code, is indispensable to give it sufficiency as a pleading for the purpose intended. The generality and vagueness of the allegations of the petition are illustrated by the following quotation:

"Plaintiff alleged: That he could not definitely and accurately state the kind or nature of influence that defend-

ant had over him, but that she would procure and secure him to do things in connection with his property, as hereinbefore referred to, that he did not want to do, and all of the time objected to doing, and he could not resist the commands, arguments and influence of the defendant. That at all times herein mentioned, with reference to the real and personal property of plaintiff, defendant could and did prevail upon plaintiff to do whatever she (the defendant). willed or insisted upon his doing."

And the witnesses for the plaintiff in their testimony at the trial, it seems to us, were even more general, vague, and indefinite in their relation of the actual facts and circumstances constituting the alleged fraud, duress, etc., than the allegations of the petition.

There is no substantial conflict between the evidence of the plaintiff and the defendant upon any material point. Father and daughter both state with circumstantial detail their manner of life and many of the business transactions conducted by them during the years they lived together upon the land. It is true that the evidence shows that, after rational discussion of the business matters under consideration, the father often yielded to the judgment of the daughter, but her contentions always appear to have been supported by reasonable argument, such as might appeal to any normal mind, and many of the ventures thus entered into proved to be highly beneficial to all concerned. These transactions discussed usually consisted of the ordinary business affairs incident to farming in a small way, such as the buying and selling of draft horses, cattle, hogs, etc., and the discussion of these affairs was such as might ordinarily take place in any family similarly situated, and bear no evidence of a disposition on the part of one to overreach or defraud the other.

There were very few conversations between father and daughter touching the conveyance of the land. For several

years the father seems to have entertained the purpose of giving the land to the daughter who was living with him, and on several occasions he informed Mrs. Melvin and some of their neighbors of his intentions in this regard. "Sadie (Mrs. Melvin) has been as good to me as if I was a baby," he said to his neighbors, "and I want her to have the land." A conveyance therefor by deed, he thought, would be better than leaving it to her by will, because the expenses of administration would thus be avoided. As expressed by himself to Mrs. Melvin the day the deed was executed:

"I want to get all this closed and straightened out, kid, so when I am gone you will have it just as easy as now."

The nature of the conversations between father and daughter concerning the land is illustrated by the following answer of Mrs. Melvin to a question propounded to her at the trial:

"We were talking in regard to making a loan on the place. Father had about a $400 loan and second mortgage on the place, and there was already a loan of something like $900 and the object was to try to throw these two loans into one, and he said he was anxious to get this loan through, because things was tangled, and said, if anything was to happen to him by the time the place was divided, it wouldn't do no one any good, and I asked him if he intended, as he always had, that the place was to be mine, and he said, 'Yes,' and he went on to tell of an aunt. He had two sisters and two brothers and was intestate."

Such, in brief, is the simple story of Mrs. Melvin and her father, as related by themselves, up to and including the date of the deed. And the details which supply the setting for the family quarrel and go to make up this immense record, as stated by the friends and neighbors of the family and the other daughters of the plaintiff, at great length and with ingenious circumstantiality, when analyzed, do not substantially vary any of its material aspects. In our judgment, the verdict returned by the jury was the only one

that reasonably could have been expected. If it had been in favor of the plaintiff, the trial court probably would have set it aside. In such circumstances, we would not be justified in reversing the judgment of the court below on the ground of misdirection of the jury, or the improper admission or rejection of evidence. *Mullen v. Thaxton,* 24 Okla. 643, 104 Pac. 359; *McAlpin v. Hixon et al.,* 45 Okla. 376, 145 Pac. 386; section 6005, Rev. Laws, 1910.

Upon the remaining assignment of error counsel for plaintiff in error contend that, this being a suit in equity, it was not a proper case for trial by jury, and the jury should not have been allowed to return a general verdict. From the record it appears that the parties treated the cause as one properly triable before a jury, and that counsel for plaintiff made no objection to this mode of trial until the case reached the Supreme Court. Assuming that counsel are right in their contention that this was not a proper case for trial by a jury, it is too late, after the case has reached the Supreme Court, to make this objection. *Dayharsh v. Enos,* 5 N. Y. 531. The rule seems to be that whether a party to a suit formerly cognizable only in equity has a right to insist upon a trial by the court or not, after he has voluntarily accepted a trial by jury he cannot afterward insist upon having the same facts passed upon by the court. The objection that a party had a jury trial to which he was not entitled cannot be raised for the first time on appeal. *Danziger v. Metropolitan El. Ry. Co.,* 81 Hun, 5, 30 N. Y. Supp. 580; *Legett v. Leggett,* 88 N. C. 108; *Weigle v. Cascade Fire & Marine Ins. Co.,* 12 Wash. 449, 41 Pac. 53.

Finding no reversible error in the record, the judgment of the court below must be affirmed.

All the Justices concur.