## ROBERTSON v. VANDEVENTER.

No. 5354. Opinion Filed October 5, 1915.

(152 Pac. 107.)

1. **CONTRACTS—Evidence—Receipt—Parol Evidence.** A simple receipt is an admission only, and not a contract, and, like any other admission, may be explained or contradicted by parol, but if a contract be incorporated in a receipt, the receipt may be explained or contradicted by parol, but the contract cannot be, except in case of fraud or mistake.

2. **EVIDENCE—Parol—Receipt.** Where the parties had two distinct contracts, one to drill an oil and gas well in Oklahoma, and the other to drill one in Kentucky, a receipt in the following form: "Bartlesville, Okla.. July 10, 1912. Received of J. R. Robertson forty-nine 24/100 dollars. In full of all demands to date. And we further agree and guarantee to pay any lien claims filed against Hammer lease for work on well No. 3, drilled by M. D. Vandeventer and completed May 27, 1912."—may be explained by parol evidence to show that it related to the Oklahoma contract only.

3. **APPEAL AND ERROR—Harmless Error—Exclusion of Evidence.** Where evidence on an issue in a case has been admitted and is before the jury, and an offer is made of additional evidence on the same issue, which the court can see from the record is largely cumulative, even assuming that such evidence is competent, its

rejection is harmless error under the provisions of Rev. Laws 1910, sec. 6005.

4. **CONTRACTS—Breach—Instructions—Evidence.** The charge of the court considered, and no reversible error found, as the case-made contains evidence fully justifying the charge given.

5. **MASTER AND SERVANT—Breach of Contract—Measure of Damages.** Where the defendant contracted with the plaintiff to pay him $1,000 for the use of his drilling outfit and for his personal services for two months, the defendant to pay all expenses, an instruction that if the jury find for the plaintiff the damages would be for the difference, between the contract price and the amount he was reasonably able to earn by other employment of a similar character, during the contract period, after deducting the expenses of such other employment, correctly lays down the measure of damages.

(Syllabus by Devereux, C.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Action by Montie Vandeventer against John R. Robertson. Judgment for plaintiff, and defendant brings error. Affirmed.

This was an action instituted by the defendant in error to recover damages for the breach of a contract, which is hereinafter set out. The petition alleged in substance:

"That plaintiff was the owner of a complete string of drilling tools; that he was ready and willing, on May 26, 1912, to perform his part of the contract, but that the defendant delayed him until June 18, 1912, and then refused to perform unless plaintiff consented to certain modifications of the contract, which plaintiff refused to do; that plaintiff had been at all times able, ready, and willing to perform, but had been unable to do so because of defendant's default, and that the plaintiff had been damaged in the sum of $1,000 because of such default. Plaintiff also alleged that his copy of the contract had been lost, and therefore, no copy was attached to the petition."

The plaintiff was afterwards allowed by the court to amend this petition to conform to the proof, but it is not material to set it out here.  The answer was, in substance:

"(1)  A general denial; (2) a verified denial of the contract as alleged by the plaintiff; (3) the making of a contract (partly oral and partly written) on April 29, 1912, setting out a copy of the written portion, and alleged the terms of both the oral and written portions, alleging that defendant was able, ready, and willing at all times after the making of said contract to perform the conditions thereof, but that plaintiff was not able, ready, and willing to do so, and that, without any fault, neglect, or default on the part of the defendant, the plaintiff wholly failed, neglected, and refused to keep, carry out, and perform the written portions of the agreement; also that on July 10, 1912, after plaintiff had wholly failed, neglected, and refused to perform the terms and conditions of the written portion of the contract, and while plaintiff was wholly unable so to do, the plaintiff and defendant made a full, complete, and final settlement of all their affairs and business, and defendant then paid to plaintiff $49.24 in payment of all demands due from defendant."

The contract was as follows:

"Th's contract, made and entered into this 29th day of April, 1912, by and between Montie Vandeventer of Bartlesville, Oklahoma, hereinafter called party of the first part, and John R. Robertson of Jacksonville, Illinois, hereinafter called the party of the second part, witnesseth: That for and in consideration of the stipulations hereinafter set forth, the party of the first part agrees to furnish one complete string of oil well drilling tools, consisting of necessary machinery, tools, cables and standard derrick, same being now located near Bartlesville, Oklahoma, and to lease the same, together with his services unto the party of the second part, for the purpose of drilling one or more oil wells near Shelbyville, Kentucky, at a point or points to be designated by said party of the

second part, for said party of the second part. That said party of the second part to pay for all labor and expenses in placing said machinery and tools on board cars at Bartlesville, and for transporting same to Shelbyville, and for all labor and expenses in unloading same and erecting at point of drilling operations. And upon completion of said work, the said machinery, tools and derrick to be returned to Bartlesville, Oklahoma, free of all costs to the party of the first part. Said lease of tools and services to be for the period of sixty days from the date that said derrick and string of tools are placed on location for the well near Shelbyville and ready for running for the sum of one thousand ($1,000) dollars, with an option of continuing same for an additional thirty days for the sum of three hundred and fifty ($350.00) dollars. The first thousand dollars above mentioned to be payable monthly at the rate of five hundred ($500.00) per month. The said party of the first part is to superintend all loading and unloading, erection of derricks, etc., and prosecution of drilling operations. The said party of the second part is to furnish and pay for all necessary labor such as drillers and tool dressers used in the prosecution of said work. In the event that more than two wells are drilled, and should it be necessary to purchase new cable for the additional wells, it is agreed and understood that the party of the second part is to pay for said cable and drill any additional wells, but it is understood said cable is to be the property of the party of the second part. It is also agreed and understood that party of the second part is to pay the railroad fare incurred by the party of the first part from Bartlesville, Oklahoma, to Shelbyville, Kentucky, and return. The party of the first part agrees to prosecute said work in a diligent and workmanlike manner.

"JOHN R. ROBERTSON,
"MONTIE VANDEVENTER."

To the answer the plaintiff filed the following reply, in substance:

"That he denies each and every affirmative allegation contained in said answer inconsistent with the allegations contained in his petition except such as are hereinafter specifically admitted. Plaintiff denies that, as set forth in said answer, he was not ready, able, and willing to carry out his part of said contract, but on the contrary avers as in his original petition. Plaintiff further says that, as regards the settlement of July 10, 1912, referred to in defendant's answer, such settlement only comprehended and embraced certain differences arising out of this plaintiff's drilling of the well on the Aisley Hammer lease in Washington county, Okla., and did not extend to or embrace the contract sued on herein or any part thereof, and in this connection plaintiff further avers that there never has been any settlement, complete, final, or otherwise of his claim or claims against the defendant, arising out of defendant's breach of the contract sued on herein."

The instrument pleaded in the answer as a full and complete settlement of all matters in dispute between the plaintiff and defendant reads:

"BARTLESVILLE, OKLA., July 10, 1912.

"Received of J. R. Robertson forty-nine 24/100 dollars. In full of all demands to date.

"And we further agree and guarantee to pay any lien claims filed against Hammer lease for work on well No. 3, drilled by M. D. Vandeventer and completed May 27, 1912.

"M. D. VANDEVENTER,
"A. F. VANDEVENTER."

The plaintiff below introduced evidence that tended to show that he finished the well east of Bartlesville on May 26th, and was then ready to go to Kentucky and fulfill his contract, and that the drilling rig was torn down under the direction of Robertson about two weeks thereafter, but was not shipped, owing to the fact that

Robertson was away, and did not return to Bartlesville until June 18th. The plaintiff testified:

"Q. Now, you say you had a conversation with Mr. Robertson on June 18th, at the St. Clair Hotel. What was the first thing said about this Kentucky part of the contract? A. I asked him, I think, if he was ready to go to Kentucky; that I was all ready, been waiting on him several days. Three weeks was the time, I think. He said several garnishments had come in against me, and he didn't know the cause of them; he was not willing to go to Kentucky, and didn't think I was financially able to carry out my contract. Q. Well, now what else was said down here at this conversation at the hotel? A. Why, Mr. Robertson said he would not load my cars— my tools on the cars—unless he was guaranteed some way, or the contract fixed that I would not be tied up in loading the tools. Q. Well, what was the next thing said by either of you? A. I think that is all that was said. I told him I was ready and willing to go; that nothing would be tied up. There would be no liens filed on it any way. He refused to go. Q. Now, is that all that was said? A. He refused to go under the contract that was signed. I told him that was all then. I left. Q. From the 26th day of May, the date that you completed the Aylsie Hammer well, to the 18th day of June, when you have testified to this conversation you had with Mr. Robertson in which he refused to permit you to carry out the contract, what were you doing with your complete string of drilling tools? A. They were laying idle; you mean from the 26th day of May to the 18th of June, they were idle. I was waiting for him to load me on the cars. Q. What were you doing yourself personally? A. I was around town making arrangements to go away to Kentucky."

In regard to the instrument pleaded by the defendant as a full settlement of all matters, including the Kentucky contract, the plaintiff was allowed over the objec-

tions of the defendant to introduce evidence that this
receipt only referred to the well east of Bartlesville, and
did not, in any way, refer to, or have any connection with,
the Kentucky contract. The defendant introduced evi-
dence tending to show that the reason that the Kentucky
contract was not carried out was because of attachments
which were levied on the drilling rig and because of other
steps taken by Vandeventer's creditors to prevent him
from taking the property out of the state; also that the
property was mortgaged, and the mortgagees objected to
allowing it to leave the state. He also testified, in effect,
that by Vandeventer's consent the Kentucky contract was
canceled, and that the paper above set out was intended
as a full settlement of all matters between them. His
testimony, in part, is as follows:

"That was July 10th, we made the final settlement.
Mr. Montie Vandeventer was seated at the table with me.
We figured all this thing up. I said to him, 'Now, this
cleans up the whole thing.' 'Yes,' he says, 'that closes up
the whole thing.' I said, 'Where is the contract? I
wanted the contract back. He says: 'I have lost the
contract. You have got a receipt in full.' I says, 'That is
what I am accepting, a receipt in full.' I asked his father
to sign as additional. I believed that it would settle all
matters up. If he had had the contract I suppose he
would have given it to me at the time. He said he did not
have it, and it was lost, and 'you have a receipt in full.'
I says, 'That is what I am accepting all right.' I wrote
the receipt myself, and I believed I had covered every-
thing in it."

The instructions to the jury, complained of by the
plaintiff in error, are as follows:

"(5) You are instructed that the burden of proof is
upon the defendant to establish to your satisfaction by a
fair preponderance of the evidence, that there was a full

and complete settlement of all the differences existing between the plaintiff and defendant, including the contract sued on in this case, and that the defendant paid to the plaintiff and the plaintiff accepted in full satisfaction of all differences existing between them and the balance found to be due upon such settlement."

Indorsed:

"Given and excepted to by defendant.

"R. H. HUDSON, *Judge.*"

"(7) You are instructed that if you find from a fair preponderance of the evidence in this case that on July 10, 1912, there were certain differences existing between the plaintiff and defendant in this case, and that at said time, the plaintiff and defendant met and had a full and complete settlement of all the differences existing between them, and that in said settlement the contract sued upon in this case was taken into consideration, and that after consideration of all matters of difference existing between the parties it was found that the defendant was indebted to the plaintiff in the sum of $49.24, and the defendant paid to the plaintiff, and the plaintiff accepted in full settlement of all the differences that existed between the parties, the said sum of $49.24, then and in that event your verdict should be for the defendant."

Indorsed:

"Given and excepted to by defendant.

"R. H. HUDSON, *Judge.*"

"(6) You are instructed that if you find from a fair preponderance of the evidence in this case that the plaintiff was, at all times, able, ready, and willing, and offered to carry out the terms and conditions of the contract sued on in this case, and that he was prevented from doing so by reason of the failure and refusal of the defendant to

carry out and perform the terms and conditions of the said contract upon his part, then and in that event, your verdict should be for the plaintiff. But, upon the other hand, if you fail to find from a fair preponderance of the evidence in this case that the plaintiff was able, ready, and willing to carry out and perform the said contract upon his part, and that he was prevented from so doing by reason of the failure and refusal of the defendant to carry out and perform the terms and condition of said contract upon his part, then and in that event, your verdict should be for the defendant."

Indorsed:

"Given and excepted to by defendant.

"R. H. HUDSON, *Judge."*

"(8) You are instructed that in the event you find the issues in this case in favor of the plaintiff and against the defendant, then your verdict should be for the difference between the contract price agreed to be paid to the plaintiff and the amount that he was reasonably able to earn by other employment of a similar character, during the contract period, after deducting the expenses of such other employment, your verdict not to exceed, in any event, the sum of $800."

Indorsed:

"Given and excepted to by defendant.

"R. H. HUDSON, *Judge."*

There was a verdict for the plaintiff for $500, and the defendant below brings the case to this court by petition in error and case-made.

*J. B. Tomlinson* and *J. P. O'Meara,* for plaintiff in error.

*Shea & Blue* and *A. F. Vandeventer,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The first assignment of error is that the court erred in admitting parol evidence to explain the paper given July 10, 1912, by showing that it did not embrace the Kentucky contract.

It is well settled that a simple receipt is an admission only, and not a contract, and, like any other admission, may be contradicted or explained by parol evidence (4 Wigmore on Evidence, sec. 2432; *American Bridge Co. v. Murphy*, 13 Kan. 35; *Brooks v. White*, 43 Mass. [2 Metc.] 283, 37 Am. Dec. 95), but it is equally well settled that if a contract is incorporated in a receipt, the receipt may be varied, but the contract cannot (Jones on Evidence [2d Ed.], sec. 492 [503]), and in discussing this subject Mr. Wigmore says (4 Wigmore on Evidence, sec. 2432):

"Which of these characters a given document possesses must of course depend on the particular case; but it is well understood that a document which is a receipt may, in some instances, be indisputable as being in effect a release or contract."

The evidence in this case is directly contradictory: that on behalf of the plaintiff tending to show that the only matter considered in the settlement at the time the paper was signed, was the amount due on the contract for drilling the well east of Bartlesville; that on behalf of the defendant tending to show that all matters, including the Kentucky contract, were embraced. This raises the question whether the words "in full for all demands to date" take this instrument out of the class of a simple receipt, and invest it with the character of a contract or release. If the instrument was of the latter class, it was

error to allow the evidence complained of, in the absence of an allegation of fraud or mistake in the pleadings.

In *Brooks v. White,* 43 Mass. (2 Metc.) 283, 37 Am. Dec. 95, a question very like the one now under consideration was presented, and the court says:

"The court left it to the jury to find whether the receipt was intended as a discharge to Downing only, or to all of the promisors; and the plaintiffs now insist that this was erroneous, and that it was not competent for the jury to pass upon the intent of the parties as to the effect of this agreement. As it seems to us, this objection cannot avail the plaintiff. It was not submitting to them the construction of a written instrument. Their first inquiry was whether the plaintiffs had given a discharge of this demand. If that discharge was in full of all demands, as the evidence offered tended to show, it was competent to inquire what demands were the subject-matter of the adjustment, and were understood by the parties to be embraced in the receipt; whether the individual liabilities of Downing only, or the liabilities of the late firm of White & Co., of which firm Downing was a member."

In *Simmons v. Johnson,* 3 B. & Ad. 175, which was an action of covenant, the defendant pleaded a release, which recited that various disputes were existing between the parties, and that actions had been pending, but that it had·been agreed between them that, in order to put an end thereto, the defendant should pay the plaintiff 150 pounds, and that each should release the other from all actions, causes of action, and claims brought by him, or which he had against the other, and the instrument then proceeded to release all claims, demands, and actions whatsoever. It was held that parol evidence was admissible to show that the claim sued on was not intended to be included in the release. This case is cited with ap-

proval in *Fire Insurance Ass'n v. Wickham,* 141 U. S. 564, 581, 12 Sup. Ct. 84, 35 L. Ed. 860. In that case, Wickham held insurance policies on a vessel, which protected him, not only for injury caused by fire, but also for the expense of raising the vessel. While these policies were in force the vessel took fire and sank, and was damaged some $15,000 by the fire, and the cost of raising it amounted to some $15,000 more. A settlement was had between the insured and the insurance company, and receipts taken, which provided:

"In consideration thereof said company is hereby discharged forever from all further claims by reason of said fire, loss and damage, and said policy * * * is hereby assigned, with all claim thereunder, to said company, and said policy is hereby canceled in full and surrendered to said company."

After this settlement and after this receipt was given, an action was brought on the policy to recover the amount due for raising the vessel, and the question was whether parol evidence was admissible to show that the receipt was intended to cover only the loss by fire, and the Supreme Court of the United States held that parol evidence was admissible    Plaintiff in error has cited cases apparently in conflict with the rule laid down in the above cases; but, in the absence of any decision of our own court, we are of the opinion that those above cited state the true rule, and therefore there was no error in receiving the evidence objected to.

The case of *McNinch v. Northwest Thresher Co.,* 23 Okla. 386, 100 Pac. 524, 138 Am. St. Rep. 803, cited by plaintiff in error, has no bearing on the question now under consideration. The question in that case was whether the terms of a promissory note could be altered

or explained by parol, in the absence of an allegation of fraud or mistake, and the court does not consider the question of the effect of a receipt at all.

The second assignment of error relates to the exclusion of certain evidence offered by the plaintiff in error, which offer was as follows:

"The defendant offers to prove by the witness, Barney Robinson, that the teamster, Holloway, notified him, Robertson, that he, Holloway, had a bill against this stuff, and that he would attach it in order to prevent it from being shipped out; that Pat Welsh told him the same thing as to a claim Welsh said he had against Vandeventer; that Mr. Gabel told him that Mr. Breen had a bill of $100 which he would attach, and that he would attach the property in order to prevent it being shipped out, and Gabel notified Mr. Robertson of that fact.

"We also offer to prove that two other parties had given him notice of the same thing; and we offer also to prove by the witness Gabel that he is qualified—that he is familiar with the price of lumber in this vicinity at that time, such lumber as is used in the construction of drilling rigs; that at the request of Mr. Robertson he made an estimate of the amount of lumber which would be required to reconstruct the drilling rig in a workmanlike manner, and that he informed Mr. Robertson that the reasonable cost of the necessary lumber to reconstruct the rig would be in the neighborhood of $400."

Evidence had already been admitted, showing the attachment levied on the plaintiff's rig, and garnishment which had been served on Robertson. In view of this evidence, assuming but not deciding that the evidence offered was admissible, we think the refusal to admit was harmless error. Rev. Laws 1910, sec. 6005; *Nowlin v. Melvin,* 47 Okla. 57, 147 Pac. 307.

The third assignment of error is that the judgment should have been for the defendant. The argument in plaintiff in error's brief on this subject is founded entirely upon the effect of the receipt, and is answered by what we have said on the first assignment of error.

The fourth assignment of error complains of the giving of instructions 5 and 7. The complaint of these instructions is: First, that the court left it to the jury to say whether the Kentucky contract was embraced in the settlement and receipt. This is disposed of by our disposition of the first assignment of error. If that is correct, the charge of the trial court was entirely fair and proper. And, second, that there was no evidence sufficient to go to the jury of a refusal to perform by the plaintiff in error. In our opinion, the evidence of the plaintiff below was sufficient to take this question to the jury, and there was no error in the instruction.

The remaining assignment of error is that the court misdirected the jury on the question of damages. The vexed question of when profits can be allowed as damages does not arise in this case, for the contract provided that Robertson should pay all the expenses of placing the plant on the cars at Bartlesville, and of transporting it to Kentucky, and all expenses of unloading and erecting it at the point of drilling operations there. At the completion of the work he was to pay all expenses of returning the plant to Bartlesville, including the traveling expenses of the plaintiff below in going and coming from Kentucky, and was to pay the plaintiff below $1,000 for the use of the plant and his services for 60 days. Under this contract there was no question of "profits" in the sense that word is used in regard to recovering damages for their loss. The plaintiff below was to be at

no expense; there was no uncertainty as to what he would make, for the contract fixed that at $1,000.

The case of *Rogers v. Oklahoma City,* 45 Okla. 269, 145 Pac. 357, is not in conflict with what we have said. That case holds:

"Where a party furnishes meals in accordance with the terms of his contract, and is prevented by the city from further performing his contract, the measure of damages is the difference between the cost of production and the contract price from the date of the breach to the expiration of the period covered by the contract."

In the case at bar, there was no "cost of production," for Robertson was to pay all the expenses. In our opinion there was no error in this instruction.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.