DAVIS et al. v. CITY OF OKMULGEE.

No. 23853.   June 11, 1935.

Rehearing Denied July 9, 1935.

Application for Leave to File Second Petition for Rehearing Denied Nov. 5, 1935.

Cochran & Noble, C. B. McCrory, and S. L. O'Bannon, for plaintiffs in error.

R. J. Bollman City Atty., (L. L. Cowley, of counsel), for defendant in error.

PER CURIAM. The plaintiffs in error will be referred to as plaintiffs and defendant in error will be referred to as defendant, the order in which they appeared in the trial court.

This is an action brought by plaintiffs against the defendant for damages alleged to have been caused by acts of defendant during the time plaintiffs were constructing a dam for defendant under a written contract.

The plaintiffs set out general allegations in their second amended petition and seven distinct causes of action. The defendant filed a demurrer to each separate cause of action, and set out as the ground for each demurrer that the alleged cause of action does not state facts sufficient to constitute a cause of action in favor of plaintiffs and against said defendant.

The court sustained the demurrer to each cause of action. The plaintiffs elected to stand upon their pleadings and the court dismissed the case. From the ruling of the court, the plaintiffs have appealed.

The plaintiffs filed a second amended petition in this action in which they make general allegations that they entered into a written contract with the defendant by the terms of which plaintiffs agreed to construct a storage dam for water, which contract was according to certain detailed plans and specifications furnished by said defendant.

The plaintiffs allege in said second amended petition that all work required to be performed by them under said contract has been completed and all material required under said contract to be furnished by them was duly furnished, and that plaintiffs have fully performed and discharged each, every, and all obligations incumbent upon them to be done and performed under the terms of said contract, and that the engineer for the defendant figured compensation to which the plaintiffs were entitled according to the terms of the contract, which compensation was found to be $38,221.34, and was agreed to by the plaintiffs and the defendant, which sum was paid by the defendant; that said payment covered the work performed and material furnished at the prices stipulated in the contract and no more;

that no sum was added and no compensation given or received for or on account of any of the claims hereinafter set forth; that the plaintiffs were at the time claiming to be entitled to certain damages from the defendant by reason of the matters and things hereinafter set forth, which claims were at the time well known to the defendant and its board of city commissioners.

That at the time of the aforesaid payment the defendant required the plaintiffs to execute and deliver to it the receipt hereinafter mentioned before it would make said payment, and because of said requirement the plaintiffs did execute and furnish a receipt to the defendant in words and figures, as follows:

"We do hereby acknowledge receipt of your check as treasurer of the city of Okmulgee, state of Oklahoma, in the sum of $38,221.34, which is in full and complete payment of the work done by the firm of A. A. Davis & Company under its contract with the city of Okmulgee of the state of Oklahoma, dated May 4, 1926, for the construction of the earth dam at Lake Okmulgee. This is in full settlement of the work set forth and contained in said contract and includes all extra work which was performed by us."

The plaintiffs then allege that said receipt was not intended to and did not cover any of the unliquidated claims for damages hereinafter mentioned; that the defendant was so advised at the time of said payment and prior thereto, and that within a few days thereafter the defendant was also informed in writing in a letter addressed to the mayor and city commissioners of Okmulgee, Okla., under date of September 30, 1927, as follows:

"We have received payment on the final estimate on the dam job and signed the receipt per your request and demands, all which, as you know, is not in accordance with our contract. * * *

"We will shortly bill you for damages caused us by delays and negligence upon the part of the city. We would thank you to furnish us the revised plans as requested."

After making the foregoing general allegations in their second amended petition, the plaintiffs allege seven specific causes of action, adopting all the general allegations as a part of each cause of action.

First Cause of Action: That defendant required plaintiffs to begin work on the dam at the bed of the stream, when in fact the proper and economical method of performing said work was to begin at or near the

western end of said dam, and that defendant had neglected to procure ownership or right of possession of land over which a public highway was constructed and certain pipe lines were laid which caused delay in completing the dam.

Second Cause of Action: That plaintiffs were required by defendant to procure dirt and clay for dam from distant points instead of from pits nearest the point where such material was to be placed in said dam, and that obtaining dirt and clay from more distant points increased the cost of construction.

Third Cause of Action: That said defendant would not permit plaintiff to mix concrete at night and that the proper and economical method of mixing and laying concrete was either during the day or night and refusal to permit mixing concrete at night increased the cost of construction.

Fourth Cause of Action: That the defendant arbitrarily caused the plaintiffs to mix certain concrete for use in constructing of said dam too dry and that by reason thereof plaintiffs were required by defendant to repair and resurface said work done and that the repairing and resurfacing greatly increased the cost of performing said work.

Fifth Cause of Action: That defendant arbitrarily required the plaintiffs to reinforce the core wall of said dam with steel bars and so-called dowels and to drill holes in certain sections of said concrete already in place and to grout said dowels in place in said holes and that same was not provided for in the plans and specifications and that said additional work greatly increased the cost of performing said concrete work.

Sixth Cause of Action: That there was a natural drainage extending from a northern and northwesterly direction to the location of the dam and the channel carried water from the drainage area of approximately 40 square miles, and that this area was covered with trees, shrubs, brush, and undergrowth of various kinds, and that the defendant cut down trees, shrubs, brush, and undergrowth and failed to destroy the same, and the same was carried by runoff water from the rainfall into the intake tower and tunnel constructed by plaintiff, thereby stopping the flow of water and forcing it back so that it flooded the work being done by plaintiff and washed out a large part of it, washed away and destroyed

concrete forms, etc., and this happened on several occasions and by reason thereof caused great delay and increased cost of construction.

Seventh Cause of Action: That by reason of the additional cost of construction the dam as set out in the first six causes of action in the sum of $111,439.12, and that plaintiffs are entitled to recover 15 per cent. of said amount as provided in the contract for extra work required by defendant.

The contract attached to the amended petition states that the plans, specifications, and proposal of the contractor are made a part of the contract and agreement as fully and absolutely as if set out in haec verba.

The contract contains the following paragraphs:

"That we have personally examined the location of the proposed work and have satisfied ourselves as to the amount and character of the work and material necessary to complete the same according to the annexed contract, plans and specifications.

"The earth dam herein specified, together with its appurtenances, is located in sec. 8-T. 13 N., R. 12 E. about six miles west of the city of Okmulgee, Okla., directly upon an existing county highway with macadam surface, treated with penetration asphalt and of easy grades. See Drawing No. 1.

"Roads and Fences: Roads subject to interference from the work covered by this contract shall be kept open, and the fences subject to interference shall be kept up by the contractor until the work is finished.

"Drainage area of the western watershed at the dam site is approximately 40 sq. miles, the runoff from which will need to be handled by the contractor entirely at his own risk, and he shall take all responsibility as to washout and consequent replacement of fill material, core wall or other structures.

"The contractor shall fully satisfy himself as to the water conditions to be met during the period of contracting and shall assume all responsibility for the safety of all temporary and permanent parts of the work until completed and finally accepted. Should he consider that the tunnel provided and shown in the plans and paid for at contract prices, is not sufficient in size for safe diversion of the stream and protection of his work until the work shall have reached a height safe against danger from flood, then he shall provide at his own expense other means of diversion, such as enlarged tunnel section, flumes across the surface of the earth fill, or other expedients. The method of handling the water shall be, in general,

at the discretion of the contractor, subject, however, in every respect to the approval of the engineer.

"The contractor shall be responsible for all material and work until its completion and final acceptance, and he shall at his own expense replace damaged or lost material and repair damaged parts of the work, or the same may be done at his own expense by the city. He shall take all risk from floods and casualties and shall make no charge for damage or delay from such causes.

"The contractor acknowledges having examined the record of all borings and test pits and to have confirmed same himself, to his satisfaction, by such additional borings and test pits, meteorological records, etc., as to the local foundations, the barrow material, and weather conditions so that no extras of any sort will be claimed because of character of the material encountered in excavation of core wall, ditch, or any other cause related to the nature of materials handled or water conditions encountered.

"When the terms of the contract shall have been fully complied with to the satisfaction of the engineer and the board of city commissioners, and when a release of all claims against the city under or by virtue of the contract shall have been executed the contractor, final payment will be made of balance due, including the percentage withheld as above, or such portion thereof as may be due the contractor."

The contract also provided, in addition to the paragraphs set out above, for the payment of the extra material when ordered in writing by the engineer, if the work was suspended by order of the engineer for any substantial cause, and by no fault of the contractor an additional time was extended for the completion of the work, and the methods to be used by the contractor to be approved by the engineer. The contract is very full and complete and is not ambiguous in any way.

The plaintiffs alleged in their petition that all work required to be performed under said contract was finally completed, and that they had received compensation to which they were entitled, which is as provided in said contract, and signed a receipt in full payment of said contract. This was a release of all claims against the city by reason of the work done.

"In considering a demurrer to the petition, it is the duty of the court to examine the petition, and if the petition, taken as a whole, and upon giving full import and consideration to all the inferences that may be legally drawn therefrom, fails to state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant, it is not error for the court to sustain such demurrer." Cook v. Fisher, 85 Okla. 109, 204 P. 927.

The inferences which may be legally drawn from the petition show that the contractor was responsible for the completion of the work after the contract was awarded, and that on receiving final payment and giving receipt therefor, all claims against the city by the plaintiffs were paid in full. As observed in the paragraphs of the contract set out above, the plaintiffs had personally examined the location of the proposed work and had satisfied themselves as to the amount and character of the work and material necessary to complete the work according to the contract, plans, and specifications. The plaintiffs had knowledge of the roads and fences, the drainage area, water conditions and the material that was available for use in the work, and, by executing the contract, agreed to complete the work regardless of any condition that might arise. A final settlement was made according to the contract and the plaintiffs were paid the amount to which they were entitled.

It was in contemplation of the parties to the contract that, when the work was completed and the final payment made and a receipt signed by the plaintiffs, this was a release of all claims against the city.

The plaintiffs' effort in this case to avoid the effect of the so-called receipt executed by it as a settlement of the claims and demands upon which it bases its action is predicated upon the theory that, in so far as the instrument constitutes a simple receipt, it is an admission only and may be explained or contradicted by parol. Robertson v. Vandeventer, 51 Okla. 561, 152 P. 107. Plaintiffs also say, in effect, that in so far as the instrument in question may be considered a release or contract of settlement, it is ineffective for the reason that there is no consideration. In arriving at this conclusion, plaintiffs point out that in their petition they asserted, in effect, that the amount paid at the time the receipt or release was executed was admitted by the city to be due, and that inasmuch as there was no amount paid on the disputed claim set forth in their petition, there was no consideration for a settlement of the same.

It is the ordinary rule of law that a simple receipt is a mere acknowledgment, and like any other acknowledgment it may be explained or contradicted by parol evi-

dence. If, however, the so-called receipt contains other and additional language, which, in effect, makes it a written release or contract of settlement, its terms cannot be varied or contradicted by parol, unless, of course, the force and effect of the contract may be destroyed by showing that it was without consideration, or that it was procured by fraud or misrepresentation, or executed by mutual mistake of the parties.

In urging that the release and settlement as contained in the receipt executed in the case at bar was without consideration, plaintiffs have entirely overlooked the extremely important fact that by the terms of the contract for the construction of the dam, as previously set forth in this opinion, the final payment under the contract was not to be made until a release of all claims against the city had been executed by the contractor. It is thus apparent that by the terms of the contract, the contractor was bound to execute the release involved in this case before the receipt of final payment, and the delivery of the final payment by the city to the contractor was as much in consideration of the execution of the release as it was in consideration of the performance of work under the contract. In other words, the contractor in this case, by executing the release involved herein, was merely performing an obligation assumed under the terms of the construction contract.

The obligation to execute a release prior to final payment was an integral part of the construction contract, and was supported by the same consideration that supported the other obligations and promises therein contained. In 6 R. C. L. 675, it is said:

"An agreement made pursuant to a previous contract which was supported by a consideration may be considered a part of that contract and therefore based upon a sufficient consideration. In other words, where a contract contemplates the subsequent execution of a subsidiary agreement, the promises in such agreement are supported by the consideration of the original contract."

We therefore conclude that the release and contract of settlement as contained in the receipt involved in this case is supported by sufficient consideration to render the same effective as a contract of settlement, and that, since the execution of the release was admitted and its effectiveness was questioned only upon the erroneous theory that it was not supported by consideration,

the trial court properly decided that all claims against the city arising under the contract had been settled and correctly sustained a demurrer to each of the causes of action involved in the petition.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Grover C. Wamsley, Sam L. Wilhite, and Wm. McFadyen in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Wamsley and approved by Mr. Wilhite and Mr. McFadyen, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, and CORN, JJ., concur.