## No. 13,779.

### FRENCH *v.* COMMERCIAL CREDIT COMPANY.

(64 P. [2d] 127)

Decided November 9, 1936.

Mr. PAUL L. LITTLER, for plaintiff in error.

Messrs. STONE & PORTER, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

IN the district court of Hinsdale county, French, the plaintiff in error, obtained a temporary injunction to restrain a threatened sale for alleged foreclosure of a chattel mortgage, which injunction, on hearing, was dissolved. He now asks for a reversal.

The litigation arises out of French's promissory note for $644.76, dated August 22, 1930, and secured by a chattel mortgage on an automobile. Before maturity the payee sold and assigned the note to the Commercial Credit Company, defendant in error. It was payable in twelve installments of $53.73 each. These were due on the 22nd day of twelve successive months, beginning one month after date of the note. The September, October and November installments were duly paid. French, finding it impossible to meet the subsequent payments promptly, thereupon wrote to the Denver office of the company asking it to grant a readjustment by extending the time for paying the fourth and succeeding installments. On March 3, 1931, the company replied to French's general suggestion with the following specific offer: "Please be

advised that it will be okey to make one installment to us if you will continue to make these payments to us each month until you are caught up.'' The offer was immediately accepted, French mailing to the company on the very next day (March 4) a check for the full (fourth) installment, which in his previous letter he had reported as ready to send. Later in the same month he remitted by check to the company another full installment by check. These were followed by like payments complying with the extension arrangement and made direct to the company in each of the next six months, leaving only one installment of $53.73 still to be paid, namely, the one which would fall due under the agreement on October 22, 1931. That sum French covered by his check of October 19, which he mailed in the usual manner. On it he noted: ''Final payment on Whippet Car Note & Mrg.'' This last check the company refused to accept.

On March 7, 1931, a replevin suit to recover the mortgaged automobile had been commenced in Hinsdale county by the company's attorneys, whose office was in Gunnison, Colorado. The summons was served upon French near Lake City, the county seat of Hinsdale county, two days later.

The record shows that the company had not then informed its attorneys of the extension agreement or of the payment made thereunder by French's check of March 4, 1931. In fact, it does not appear that the company ever apprized its attorneys of the aforesaid payment, so made before suit was brought, nor of the agreement which the company had made direct with French. By letter dated March 21, 1931, the company merely told these attorneys: ''Please be advised that we have received a draft from the above purchaser [French] covering one installment on his car. We are writing you to know whether we should apply this against the account or not. The account at this time is past due for January, February and March 22nd in the amount of $53.73 each.'' At the time of writing this letter the March 4 payment, if not the second

payment also, had been transmitted to the company in strict compliance with its letter to French of March 3.

It was only when the second payment had, in accordance with the agreement, been forwarded by French prior to March 25 that the company in a letter to French of that date—after saying it acknowledged receipt and was applying it to French's account—wrote: "This is formal notice to you, however, and this is done on the advice of our attorney, that we are not surrendering our course of action on the replevin suit which has been started. We intend to push the replevin suit through to a conclusion. You will either have to give up the automobile or pay your account in full, plus all of our attorney's costs. It is possible that you could see them and settle the matter out of court and save yourself part of the attorney's costs. However, the matter is entirely in their hands. They have instructions to push it through to a final conclusion, and any agreement will have to be reached with them."

It is certain that, when the company and French made their agreement in the beginning of March, no replevin suit had yet been instituted and no "attorney's costs" had accrued. If, then, the parties carried out that agreement without any default on the part of French, it stands to reason that no attorney's fees would be earned in the collection of the note.

Manifestly the offer contained in the company's letter of March 3 had been accepted and acted upon before the letter of March 25 was received by French on the 30th. Two installments had then already been paid in conformity with the definite arrangement made by and between French and the company itself without the intervention of the company's attorneys.

The controversy between the parties is as to the legal effect of what they did and failed to do. There is no material conflict in the evidence.

French did not contest the replevin suit. Findings and judgment were there entered against him on September

8, 1931. The salient points of the district court's attempted adjudication are as follows:

"* * * French is indebted to the plaintiff [company] in the sum of $107.44, the balance due upon his certain promissory note dated the 22nd day of August, 1931; that it is provided in said note that in the event it becomes necessary for plaintiff to employ an attorney to enforce the collection of said note, that fifteen per cent of the principal sum due thereon at the time of the commencement of its action, will be paid by the maker as attorney's fees and costs of collection; that the defendant has agreed to pay and is indebted to the plaintiff in the sum of $72.54 for its attorney's fees and expenses of collection, which is a reasonable fee for its said attorneys; that the plaintiff corporation is the owner and holder of a chattel mortgage * * * upon one * * * automobile [duly described], which chattel mortgage is a first and prior lien upon said automobile, and that the defendant is in default in the payment of the promissory note hereinbefore referred to, which is secured by the aforesaid chattel mortgage, and that the plaintiff is entitled to the immediate possession of the personal property hereinabove described, or the value thereof at the time of the commencement of this action, which is herein found to be the sum of $483.57.

"Therefore, it is ordered, adjudged and decreed * * * that the plaintiff do have and recover of * * * French judgment in the total sum of $179.98 debt and for attorneys' fees herein; and that the plaintiff do have and recover of and from the defendant, F. C. French, immediate possession of the aforesaid personal goods and chattels, or the sum of $179.98 in the event that possession thereof cannot be had, together with plaintiff's costs * * * taxed at * * * $31.50 * * *."

French argues that the extension agreement in conjunction with the payments made to the company, including the rejected check for the last of the nine deferred installments, has brought about an accord and satisfaction.

452

The company tries to meet the contention, (1) by insisting that the agreement was ineffectual as such because there was no legal consideration to make the agreement a valid contract sufficient to constitute accord and satisfaction; and (2) by pleading res judicata, not only as to the existence of a default at the time the replevin action was instituted, but also as to the amount due on the note when judgment thereon was rendered. Other defenses are interposed, but we do not consider them meritorious. We shall discuss the first and second arguments of the company in order.

 I. Sufficiency of the Extension Agreement.

Unquestionably, according to respectable authority, when a valid contract is made to extend the time at which the interest-bearing promissory note or other negotiable paper is to mature, a promise to pay additional interest is a consideration sufficient to support such a contract. It has been held that the contract is valid even when the rate of interest is diminished. The note in the case at bar, however, does not bear any interest whatever and it may be doubted that in such circumstances the contract when technically tested is supported by a sufficient consideration. The alleged extension agreement here merely provided that the three then overdue installments and the other deferred installments might be paid by postponing the payment of the unpaid installments for a definite period beyond their respective due dates. There was no independent agreement, express or implied, whereby French or anybody for his benefit would pay any consideration whatever in the usually accepted sense, whether in the form of interest or otherwise, nor does any such consideration seem to have been paid. The agreement thus perhaps fell short of being an enforceable executory contract.

 But the company's contention that there was no legal consideration for the extension agreement, and that there was no enforceable contract, is not decisive of the matter. In the state of the present record we may well

apply the principles underlying accord and satisfaction which are here invoked by French. It is true that a subsequent contract based upon a valid consideration may itself not only confirm, fortify and in effect constitute an accord but may accomplish a satisfaction thereof by substituting the obligation of the new contract for the original liability or duty. See: The American Law Institute's Restatement, Contracts §§417, 418, 419.

It may perhaps grate on one's sense of justice to say that if the contract to be extended was for payment with interest its extension may be validly agreed upon, but that if the parties did not originally contract for interest to be paid on the principal the extension agreement would be futile as an executory contract. Nevertheless, accepting this latter proposition as correct for the purposes of our discussion, we consider in the present instance the question whether what amounts to an accord was followed by conduct which in itself, and not by virtue of being a full fledged and binding contract, evidenced an actual satisfaction by full and substantial performance of the accord. We assume, then—without deciding—that mere mutual promises in connection with the postponement of a non-interest-bearing debt are not sufficient consideration for each other. We think, however, that the extension agreement may properly be sustained on the other ground, namely, that though it be not an enforceable executory contract an accord has here been fully carried out by effectual performance in conformity with the extension agreement.

Do the facts sustain this view? We think so.

Reverting to those facts, we note that French's last check—sent exactly as prescribed by the substituted agreement, but rejected by the company—was so sent in absolute compliance with the procedure which had been pursued with the obvious approval of the company in connection with each of the previous payments made under that agreement. The company cannot be allowed thus to lead French into paying the full amount of the

principal indebtedness on slightly deferred payment dates and thereupon, at the very moment of receiving the final installment transmitted by French, reject this without notice in advance. The method used in the previous payments must in these circumstances be deemed sufficient for the last one. Compare: Restatement, Contracts, §311. See illustration 1.

We therefore hold that, unless defeated by the plea of res judicata, French is entitled—under the uncontradicted evidence—to claim an accord and satisfaction.

II. Res Judicata.

Under the plea of res judicata the question arises whether the judgment in the replevin suit will nevertheless prevent French from relying upon the alleged accord and satisfaction above discussed. That judgment was not questioned by French in the district court or elsewhere and became final. It certainly must be taken to have adjudicated something. This something is the fact that some default or other existed when the suit was brought, for a default was a necessary condition to judgment for possession. To deny the judgment that effect would be contrary to the elementary rules of res judicata. We proceed to determine the proper scope of the judgment.

Though a court may have undoubted jurisdiction over a certain subject matter and over the person of a defendant as well, yet the judgment attempted to be entered by the court may itself be so palpably void in one of its parts that this part must be cast aside whenever the judgment is attacked either directly or collaterally. *People v. Burke,* 72 Colo. 486, 212 Pac. 837. Such is the necessary effect when the court has extended its adjudication beyond the legal limits of its power.

A replevin judgment, for example, is controlled by our Code of Civil Procedure, which says: "In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession or

the value thereof, in case a delivery cannot be had, and damages for the detention.'' Code (C. L. '21, p. 150), §247.

Consequently in the replevin suit brought against French the district court had no jurisdiction to try the issue of indebtedness except to the point of merely ascertaining whether there was any indebtedness at all, and its judgment must now be limited accordingly by ignoring the part which is beyond its jurisdiction. That part, in other words, must be treated as sheer surplusage.

The inevitable result is that under the replevin suit the company came into lawful possession of French's automobile. Hence the judgment against French for costs is good, exclusive of that part of the judgment which purported to award damages for the indebtedness and for attorneys' fees. But the company held its possession solely as a mortgagee. This possession continued by virtue of the replevin judgment, but only until it should develop that there was no unpaid balance on the promissory note secured.

To summarize: The company's admitted receipt of French's check for the final installment effected a full performance of the agreement between them; that is to say, there was then no further liability on the part of French for which the mortgaged automobile could constitute security. The company's right of possession is automatically ended by the state of the evidence in the record. French's tender of the last installment (represented by the check of October 19, 1932) having been kept good, the company is entitled to the amount thereof. As heretofore stated, the costs in the replevin case are a proper charge against French, but unsupported by any lien. There is, of course, no right in the company to sell under a purported foreclosure, and French is now entitled to a return of the property. If the automobile is in his possession under a redelivery bond, he may keep it.

It follows that the judgment of the district court must

456

be reversed with directions to reinstate the temporary injunction and make it permanent.

Judgment reversed with directions.

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, and MR. JUSTICE YOUNG concur.