## STRIKE v. WHITE et al.

No. 5766.   Decided December 31, 1936.   [63 P. (2d) 600.]

*E. A. Rogers* and *K. K. Steffensen,* both of Salt Lake City, for appellant.

*N. J. Cotro-Manes,* of Salt Lake City, for respondent.

ELIAS HANSEN, Chief Justice.

Plaintiff secured a judgment against B. E. White, hereinafter referred to as defendant, for the sum of $508, together with interest. The judgment was for money paid by plaintiff to the Electrical Research Products, Inc., hereinafter referred to as the electrical company. Plaintiff claims that he was compelled to pay and did pay that sum of money to the electrical company notwithstanding defendant agreed and was obligated to pay the same. Defendant appeals. He assigns a number of errors, the principal one of which is that the evidence does not support the judgment. Oral argument was made and brief filed on behalf of defendant in support of his contention, but no one appeared at the oral argument in this court for plaintiff, and no brief has been filed by him or on his behalf. In the main, there is no conflict in the evidence. The following facts are established by the uncontradicted evidence: On October 4, 1934, plaintiff and defendant entered into a written contract whereby plaintiff agreed to sell and defendant agreed to buy plaintiff's interest in the L. N. Strike Amusement Company, a Utah corporation, which will hereinafter be referred to as the amusement company. Plaintiff's interest in the amusement company consisted of 3,300 shares of its capital stock, which was one-half of the outstanding capital stock. The amusement company owned and operated the Star Theatre located at 72 East 1st South street, Salt Lake City, Utah. The contract price was $10,000, of which $4,000 was paid on the date the contract was executed. It was by the contract provided that proceedings should be instituted for the dissolution of the amusement company; that a copy of the contract, certified check for $6,000, bill of sale conveying all of the plaintiff's interest in the amusement company to the

defendant, and the certificate properly indorsed for the 3,300 shares of capital stock in the amusement company, should be placed in escrow with the Walker Bank & Trust Company to there remain until the obligations of the amusement company were paid and it was dissolved. By the terms of the contract, plaintiff agreed "to discharge all the outstanding obligations and liabilities of every kind and nature now against the L. N. Strike Amusement Company and said Star Theatre." It was further provided in the contract that when the court signed a decree dissolving the amusement company and it was made to appear that all of the obligations and liabilities of the amusement company and the Star Theatre were fully paid and discharged the certified check for $6,000 was to be delivered to plaintiff and the bill of sale and the certificate for 3,300 shares of the capital stock of the amusement company were to be delivered to the defendant. Plaintiff was by the terms of the contract to retain all of the income from the amusement company up to the date of the contract. Thereafter the income was to go to the defendant. In due time the contract was performed by the parties thereto. This litigation is the culmination of a controversy about the provision in the bill of sale. Plaintiff, by the bill of sale executed by him, warranted title to the property conveyed "against all claims and demands of every person or persons whosoever lawfully claim an interest or lien in the same"; but further provided that "it being understood that the purchaser will assume to pay all future rentals for services in connection with the sound equipment contract with the Electrical Research Products, Incorporated." Defendant objects to that part of the bill of sale which provides that the purchaser will assume to pay all future rentals for services, etc. He contends that he, at no time, agreed to assume the payment of future rentals as in the bill of sale provided, or at all. Plaintiff contends to the contrary.

The following is a summary of the evidence touching that controversy: Plaintiff testified that the bill of sale was

drawn and signed by him at the same time the contract was executed; that he and defendant and their respective attorneys and a Mr. Floor were present when the contract and bill of sale were drawn and signed; that the bill of sale was read and discussed among the parties present at that time; that after being executed the bill of sale and contract were placed in escrow at the Walker Bank; that prior to the dissolution of the amusement company he paid the electrical company $508; that he made demand that defendant pay the $508, but he refused and still refuses to do so; that the $508 was an obligation of the amusement company, but it became his obligation when he, by the written contract, agreed to pay all of the obligations of the amusement company; that he was compelled to pay the $508 because the court would not sign the decree dissolving the amusement company until it was paid. The testimony of Mr. Floor, a witness called by the plaintiff, is to the following effect: That he is the manager of the Star Theatre; that he and defendant went to the office of the electrical company in the early part of October, 1934; that at that time defendant inquired as to whether or not the sound equipment at the Star Theatre was on a rental basis; that defendant was informed that it was on a weekly rental basis; that the weekly rental was $17.36, and that defendant was so informed; that it was installed at the Star Theatre pursuant to a written lease; that the equipment was in the Star Theatre on October 4, 1934; that it was rented to the amusement company for a number of years with an option to renew the lease; that, as he remembered it, defendant went to the electrical company office before entering into the contract with plaintiff; that he went there for the purpose of ascertaining the expense of operating the theatre; that he (the witness) was present in the office when the bill of sale was signed, but he knew nothing concerning its terms; that the $508 paid by plaintiff was a payment of rental in advance; that because the $508 was paid the rental of the equipment at the theatre was reduced to $14 and some cents per week. Defendant testi-

fied that he did not see or hear read or discussed the bill of
sale until a week or two before the papers were withdrawn
from the Walker Bank; that he did not know the contents
of the bill of sale until he was asked to pay the electrical
company. It was stipulated that when the papers were
taken from the Walker Bank defendant objected to the pro-
vision in the bill of sale requiring that he pay future rentals.

It will be observed from the foregoing summary of the
evidence that the liability, if any, of the defendant to pay
future rentals to the electrical company rests entirely on
inferences to be drawn from the testimony of plain-
tiff to the effect that the bill of sale was discussed by
the parties at the time the contract was entered into
and the bill of sale executed. The fact that defendant visit-
ed the office of the electrical company to ascertain the
amount of weekly rentals which were being paid to that com-
pany does not shed any appreciable light upon this contro-
versy. Regardless of who was to pay such rentals defendant
may well have desired the information sought in order to
ascertain whether or not the business which he was about to
purchase was profitable. An inference that defendant
agreed to pay the rental on the equipment at the Star Thea-
tre is in direct conflict with that provision of the contract
which provides that plaintiff shall "discharge all of the out-
standing obligations and liabilities of every kind and nature
now against the L. N. Strike Amusement Company and said
Star Theatre." It will be observed that the language just
quoted covers all obligations and liabilities of every kind
and nature that were outstanding against the amusement
company and the Star Theatre at the time the contract was
executed. Obligations and liabilities that were not due when
the contract was entered into may not be excluded from
plaintiff's undertaking without doing violence to the lan-
guage used. That the money paid by plaintiff to the elec-
trical company was an obligation of the amusement com-
pany is not questioned. Plaintiff understood it to be such
because, according to his own testimony, he was by his con-

tract with defendant obligated to pay the same. It is an elementary rule of evidence that a written contract which is definite, certain, and complete in its terms may not be varied by parol evidence. The learned trial judge recognized that rule by refusing to permit plaintiff to testify concerning what was said prior to and at the time the contract and bill of sale were executed. Another well-established rule of law is that where two or more written instruments are executed as a part of one transaction such instruments should, when possible, be construed together. Under the facts disclosed by this record, the latter rule does not aid plaintiff. The bill of sale was not, so far as is made to appear, signed or accepted by the defendant. On the contrary, as soon as he learned that plaintiff claimed that he should pay the obligation in dispute, he objected to that provision in the bill of sale which was calculated to cast that burden upon him. If, as the authorities teach, the written contract here brought in question cannot be varied by parol evidence, for stronger reasons, that contract being as it is, definite and complete on its face, cannot be varied by plaintiff executing a bill of sale in conflict with the contract. In this case to bind the defendant by the bill of sale resort must be had to parol evidence to make it a part of the contract. If the bill of sale may be a part of the contract by parol evidence, then in its final analysis parol evidence works a variance of the contract. If parol evidence may not vary a written instrument, an inference drawn from such evidence may not accomplish that end. If the contract does not express the intention of the parties, it may, by proper proceedings, be reformed, but until that is done the parties are bound by its terms. There is no competent evidence to support the finding that defendant was obligated to pay plaintiff the $508 which he paid to the electrical company.

In his brief defendant argues that his demurrer to the complaint was improperly overruled. Such ruling is not assigned as error and hence not before us for review. De-

fendant also complains because the court below found against him on the counterclaim which he set up in his answer. In his counterclaim defendant alleged that he was compelled to pay and did pay $67.94 in bills and $78 in taxes which were obligations of the amusement company prior to October 4, 1934, and which, by the contract of that date plaintiff obligated himself to pay. He also alleged that he was damaged in the sum of $350 because plaintiff did not file proof that all of the obligations of the amusement company had been paid; that because of such failure he was compelled to make an investigation to ascertain whether or not the same had been paid by plaintiff. There is no evidence that defendant paid $67.94 or any other sum to take care of unpaid bills as alleged in the counterclaim. There is evidence that defendant paid taxes in the sum of $78, but the evidence also shows that such sum was repaid to defendant. There is some testimony to the effect that defendant spent some time in ascertaining whether or not all of the obligations of the amusement company had been paid, and also that he employed an attorney and paid him $25 for advice in connection with the transaction. The court below took the view that the time and money expended by defendant in such respect were made for his own purposes and not as the result of any breach of the contract with plaintiff. The evidence supports such finding. No error was committed by the court below in denying defendant judgment on his counterclaim. Other errors are assigned, but as this cause must be retried, if at all, on a theory different from that on which it was heretofore tried, no useful purpose will be gained by a discussion of the other assignments.

The judgment is reversed. This cause is remanded to the district court of Salt Lake county, Utah, with directions to grant a new trial and for such other and further proceedings not inconsistent with the views herein expressed as may be proper. Appellant is awarded his costs on appeal.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice.

I concur, but on a different ground. The agreement for the sale of the Strike interests apparently gave White possession of the Star Theatre from the date of the contract, October 4, 1934. Up to that date A. B. Floor and plaintiff, Strike, were to share the profits of what was in legal form a corporation, but in reality a partnership. After that date, Floor and White were to become partners. Strike's stock in the amusement company, together with a bill of sale and disclaimer from creditors, were to be placed in escrow by Strike and a cashier's check for $6,000 by White to be cross-delivered by the bank upon the obtaining of a certificate of dissolution of the corporation and proof of payment of all creditors. Meanwhile, White was evidently running the theatre and obtaining the revenues. The agreement provided that Strike would assume and "discharge all outstanding obligations and liabilities of every kind and nature *now* outstanding against the amusement company and said Star Theatre within 90 days from the date hereof" (italics supplied). Naturally, the word "now" becomes important. If possession, management, and profits were to go to White after October 4th, he was probably to assume and pay all debts incurred or arising after October 4th for services rendered or rental of the sound machine due for the period in which he was in enjoyment of the theatre. Therefore, the question is: Was the $508 which Strike seems to have been required to pay an obligation "now" outstanding on October 4th, or was it something which would arise after that date according to a contract with the Electrical Research Products, Inc.? If it was the latter, it is truly a debt of White, and if Strike paid it to fulfill the technical requirements of his agreement, he is entitled to be reimbursed. But we have not the agreement between the amusement company and the Electrical Research Products Company in the

record. It was excluded from the evidence. Only if that agreement would show that the $508 was an outstanding obligation on October 4th by Strike, would parol evidence that White had agreed to a bill of sale containing a clause that he, White, should pay it, indirectly vary the written contract. If it was not then outstanding but arose as the sound machine was continued in use, there would be no variation of the written contract. It would be a matter not covered by the contract and as to such matter the verbal agreement of the parties might be shown. It is because I think the case cannot be properly decided until the contract between the amusement company and the Electrical Research Company is in evidence and the legal nature of the payments called for by that contract construed by the court that I concur in a reversal and the granting of a new trial. When this contract is before us, we may determine whether the parol evidence rule applies as to the conversation regarding the bill of sale which was placed in escrow and which White refused to accept in toto. As the record stands, there is a conflict of evidence on the question of whether White agreed verbally to the contents of the bill of sale and therefore to its provision that he should assume "all future rentals for services in connection with the sound equipment contract." If the contract between the amusement company and the Electrical Research Company shows an outstanding obligation owed to the latter before October 4th, then perhaps the opinion is correct that to permit oral evidence that White had agreed to the bill of sale would indirectly vary the written terms of their contract. But if the contract with the electrical company shows that it was not an outstanding obligation at that time, there is no place for the parol evidence rule. There is then a matter not covered by the main contract. The very assignment of the sound equipment contract as an asset of the amusement company may carry with it the obligation by White to pay all future rentals for service.