## LATIMER v. HOLLADAY.

No. 6487.   Decided February 23, 1943.   (134 P. 2d 183.)

*Paul E. Reimann, Francis R. Gasser,* and *Richard S. Johnson,* all of Salt Lake City, for appellant.

*Romney, Faux & Boyer,* of Salt Lake City, for respondent.

WOLFE, Chief Justice.

From a judgment of "no cause of action" in a suit asking for specific performance, plaintiff appeals.

On July 12th, 1938, plaintiff and her brother the defendant signed the following instrument:

### " 'Contract

" 'Whereas, Alveretta C. Holliday was the owner of certain real property located at 340 West North Temple, Salt Lake City, Utah; and

" 'Whereas, it was her intention to leave the same at the time of her death to her two children, George T. Holliday and Katherine Holliday Latimer; and

" 'Whereas, in order to properly finance the property and retain the same, it was necessary that a conveyance be made to George T. Holliday for the purpose of raising money; and

" 'Whereas, George T. Holliday, in consideration of the conveyance, and the release by Katherine Holliday Latimer of any rights she may have in the premises, has agreed to pay Katherine Holliday Latimer the sum of Four Hundred ($400.00) Dollars for any and all interest, right, or title she may now have or may hereafter have in the premises.

" 'Now, Therefore, for and in consideration of the sum of Four Hundred ($400.00) Dollars, payable as hereinafter set forth, and the mutual promises herein contained, Katherine Holliday Latimer does hereby release, transfer and set over unto George T. Holliday any and all right, title, or interest she may now have, or hereafter be entitled to, in and to those certain premises located at 340 West North Temple, Salt Lake City, Utah, and George T. Holliday hereby agrees to and promises that he will pay unto Katherine Holliday Latimer the sum of Four Hundred ($400.00) Dollars, the payments to commence on or before the 1st day of July, 1940, and to continue thereafter at the rate of Ten ($10.00) Dollars per month, those monthly payments to be made on or before the 1st day of each and every month until the full amount has been paid.

" 'It Is Understood and Agreed by and between the parties hereto that in the event the full amount of Four Hundred ($400.00) Dollars is paid Katherine Holliday Latimer shall have no interest to nor claim upon the property herein involved. In the event the payment of Four Hundred ($400.00) Dollars is not made as herein provided, then the said Katherine Holliday Latimer shall be entitled to an undivided one-half interest in and to the real property, or any sums derived from the sale thereof, less any sum or sums theretofore paid to her under this contract, which sum or sums shall be credited and deducted from the one-half interest due Katherine Holliday Latimer.

" 'In Witness Whereof the parties hereunto set their hands this —— day of July, A. D., 1938.

" 'Katherine Holliday Latimer
" 'Geo. T. Holliday' "

After making certain payments defendant defaulted in the payment of further installments, and plaintiff brought this action to require defendant to convey to her a one-half interest in the property.

The defendant, among other defenses, set up lack or failure of consideration. This was the only defense insisted on at the trial. On appeal, defendant contends, and the trial court so held, that plaintiff had no interest in the property described in the agreement—therefore no interest to release—therefore no consideration passed.

The contract of July 12th, however, was not one for the release of any interest which the plaintiff had but for "*any* and all interest, right or title she *may now* have or *may hereafter* have in the premises." (Italics added.) If A thinking that B has an interest in a piece of property, agrees to give B $400 to quit claim her interest if any, even against B's assertion that she has no interest, and B does deliver a quit claim deed, certainly B is entitled to recover the $400. B's releasing of any right she *may* have in the property for A's promise to give her $400 is a good consideration for the promise, and B having performed may recover from A.

The case for a consideration is no weaker if Both A and B believe that B has an interest in the property; nor is it

a case of no consideration even if A contends that B has no interest but B insists at least in good faith that she has and finally A agrees to give her $400 for a quit claim deed of *any* interest she *may* have.

Section 75 of the Restatement of the Law of Contracts defines a consideration for a promise as "(a) An act other than a promise (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise." The act of plaintiff in releasing any interest she had or may have had in the property satisfied arm (a) and perhaps (c) of the above definition.

"A quit claim deed conveying such interest as the grantor may have is sufficient consideration though the grantor in fact have no interest." Williston on Contracts, Vol. 1, § 115, p. 390, Revised Edition 1936. See, also, § 137, page 482, same volume. *Nix et al.* v. *Tooele County,* 101 Utah 84, 118 P. 2d 376.

The case of *Zion's Savings Bank & Trust Co.* v. *Tropic & East Fork Irr. Co.*, 102 Utah 101, 126 P. 2d 1053, does not deal with consideration. It deals with the question as to whether the corporation actually received a *benefit* which would estop it from defending on the ground of ultra vires. For that purpose in such case it was proper to ascertain if the quit claim did actually convey an interest and bestow a benefit.

Having determined that there would have been sufficient consideration for the $400 if a separate quit claim deed had been executed and delivered on the promise to pay the said money, we logically arrive at the inevitable position that where, in the very contract which contains the promise to pay the $400 for a release the promisee thereupon does release and convey all her right, title and interest, she is in exactly the same position as if she had given a separate quit claim deed. The court may as a condition for granting specific performance require her to acknowledge the contract so defendant may record it.

In this case it appears that the property described in the agreement belonged to the mother of plaintiff and defendant. She conveyed it to the defendant on March 20th, 1938, unknown to plaintiff. The mother was then over 80 years of age. The premises were rented to tenants and this furnished an income which helped to keep the mother. Plaintiff testified that she, and her husband through her, advanced money to pay on a mortgage which the mortgagee was threatening to foreclose; that she made repairs to the property and that she helped her mother care for it. She also testified that her mother had promised to will to her and her brother each a half interest in the property. The mother had at the time of the conveyance (March 20th, 1938) already made a will in which she willed the property to plaintiff and defendant in equal shares. Plaintiff never knew of the conveyance of March 20th, 1938, to defendants until April 6th, 1938. The conversations between plaintiff and defendant which would tend to reveal whether defendant admitted or denied that plaintiff had an "interest" in the property, either legal or in equity, were not admitted by the court on the theory that the written instrument incorporated the understanding of the parties and such oral evidence was inadmissible, a ruling which was acquiesced in by counsel for plaintiff. Such evidence might be admissible to throw light on the question of whether the defendant meant to contract for a definite interest or some interest or whether the parties intended only to contract for such interest as plaintiff may have had—be it any, some or none, were the contract ambiguous in that regard. But we think the contract itself speaks without ambiguity in that respect. In this case the contract itself showed an executed consideration in the form of a release but if the court believed that the parties meant to contract for an existing interest or thought the contract was ambiguous in that respect or that consideration had failed, such evidence would also have been admissible to show defendant's understanding as to whether the deed of March 20th, 1938, was abso-

lute or one merely for the purpose of refinancing as claimed by the plaintiff. If the latter were the case the mother would have retained an interest in the property which the defendant would realize would go by will half to his sister. A relinquishment of such interest would be indeed a consideration of substance. The relinquishment of an expectancy is consideration. Counsel contend that an expectancy is a mere "hope" but where one stands in the legal relationship of heir to an ancestor and thus in case of intestacy would inherit by operation of law, he certainly possesses something more than a person who has no expectancy. True, it is not an interest in the land of the ancestor. It is an expectancy. While not a right it is something more than no expectancy at all and certainly its relinquishment can be a consideration for a promise for the payment of money. Where the assignment of an expectancy is fairly made, supported by a fair consideration, equity will enforce it if not contrary to public policy. 4 Am. Jur., § 3, page 200, § 4, page 232, § 47, page 266.

There was also some intimation that the deed from the mother to defendant was made under duress and that the mother had not seemed to know that she had given a deed, but this evidence was not developed. The court was somewhat too restrictive in its rulings on evidence for a case in equity of this nature. For instance, the court discouraged development of evidence of an agreement between the mother and plaintiff that the latter should be willed a half interest in the property because of her advancements for repairs and payments on the mortgage, on the ground that "if there was that agreement, then the cause of action was against her mother." This evidence, of course, would be material on the issue of strength of the expectancy. It might arise to the dignity of a contract to make a will, and if it were shown that defendant had knowledge of it, might present strong reasons why he, with good reason, thought plaintiff had some right against him which would reach the property and thus reveal a basis for his

willingness to pay for the relinquishment of such right. But we think that all this would simply be by way of aid and substantiation of what is itself revealed by the contract of July 12th, 1938. Such contract was drawn at the instance of the defendant and presented to her for signature. It recites the fact to be that the mother of plaintiff and defendant intended to leave the property to these two persons and that the conveyance was made to defendant "to properly finance the property and for the purpose of raising money." The defendant by his signature admits his knowledge of such fact, there being no showing that plaintiff deceived him. The consideration received is the *"conveyance,* and *release* by Katherine Holladay of *any* rights she *may* have," and not of a definite or existing right, whatever it may be. (Italics added.) By words in presenti contained in the contract "Katherine Holladay Latimer does hereby release, transfer and set over unto George T. Holladay any and all right, title or interest she *may* now have or hereafter be entitled to," etc. (Italics added.) Had defendant agreed in writing to give $400 as in this contract provided and in default thereof, a half interest in return for the plaintiff executing a quit claim deed, and had the plaintiff executed and delivered a separate quit claim deed there would have been an executed consideration by plaintiff.

The above fully disposes of respondent's contention that plaintiff did not carry her burden of proving consideration. The consideration is imbedded in the contract. Also must fall the contention of defendant that the plaintiff alleged a different consideration than the one proved. The allegations of the reply as to the consideration were as to oral promises therein alleged consistent with the contract of July 12th and revealed a reason for its execution. But the contract showed its own executed consideration. The plaintiff was the sole witness in the case. Her testimony as far as she was permitted to proceed was consistent with the consideration shown by the contract itself. The executed consideration shown by the contract remains unimpugned. The

judgment of the court that there was no cause of action must be reversed for it was founded on the assumption that there was no consideration for the agreement of July 12th, 1938.

As to the contention of defendant that there is no acceleration clause and hence no cause of action accrued until the total time in which the $400 payable at $10 per month elapsed, it appears that the contract provides that "in the event the payment of $400.00 is not made *as herein provided,* then the said Katherine Holladay Latimer shall be entitled to an undivided one-half interest in and to said real property or any sums derived from the sale thereof," etc. (Italics added.) The event on which the obligation to convey the one-half interest arises is a failure to pay at the rate of $10 per month up to a total of $400. The lower court should have, unless there were other equities upon which its discretion to order specific performance may have turned, ordered the defendant to convey to plaintiff a half interest in such property subject to a lien on said half interest in favor of defendant for any installments on the $400 already paid. We do not think the agreement should be construed as to require the defendant to convey a half interest on default of the $10 payments and also forfeit all payments made. The defendant alleges that Katherine Holladay Latimer orally agreed to pay half the $500 mortgage which was on the property and that he was forced to pay it all himself. The contract of July 12th says nothing of such agreement and if the $500 mortgage was fully paid off by defendant at the time such agreement was made it seems inconceivable that it was not provided for in the agreement, especially in view of the fact that the written agreement was drawn at the instance of the defendant. If plaintiff had an obligation to contribute to the payment of the mortgage the $400 must have been a net amount struck between the parties after taking such alleged obligation into account.

Even though it may be that we could from this court decree specific performance in this case, we deem it better to remand the case for further proceedings in the lower court in order to determine the full amount of the payments made by defendant to plaintiff on account of the $400 and to make such provision for their repayment if a conveyance of a half interest is decreed, and to require the agreement to be acknowledged by the plaintiff for purposes of recording if desired.

Costs are awarded to the appellant.

McDONOUGH and MOFFAT, JJ., and GEORGE A. FAUST, District Judge, concur.

LARSON, Justice (concurring).

I agree the trial court erred in holding the contract sued upon was void for want of consideration. I therefore concur in the order of reversing the judgment and remanding the cause to the District Court for a new trial.

PRATT, J., on leave of absence.