381 P.2d 86

A. H. CHENEY and Harold S. Peterson,
Plaintiffs and Respondents, and
Cross-Appellants,

v.

W. R. RUCKER and Addie W. Rucker,
Defendants and Appellants.

No. 9646.

Supreme Court of Utah.

May 1, 1963.

George M. Mason, Brigham City, for defendants and appellants.

George B. Handy, Ogden, for plaintiffs and respondents and cross-appellants.

CROCKETT, Justice.

Plaintiff A. H. Cheney, assignee of certain accounts of Real Estate Exchange, Inc., sued to recover for broker's services the latter had rendered defendants in arranging a trade of their motel property for a dairy farm. The trial court rejected plaintiff's claim that he was entitled to 5% on the $95,000 value of the property, totalling $4,750, as provided by an earnest money agreement, but granted him judgment for $3,500 based upon a subsequent agreement. Defendants' attorney filed a notice of appeal, which was later dismissed. We are concerned only with plaintiff's cross-appeal in which he insists on entitlement to the full $4,750.

On March 14, 1957, the defendants Rucker signed the earnest money agreement which committed them to "pay 5% commission on *transfer of the property* * * *." Two days later, March 16, 1957, in negotiating with respect to this transaction, another contract was signed which detailed the manner of payment: that the Ruckers would execute a note for the major portion of the commission, $4,250, payable at the rate of $200.00 per month to be secured by a chattel mortgage, or by an assignment of part of the monthly milk check expected from the operation of the dairy farm; and that these payments were to begin 30 days after the Ruckers took possession of the farm.

It will be noted that the earnest money agreement had not dealt with the method of payment, but only with the percentage to be paid. The parties certainly had the right to make a second agreement, as they did, to set down in writing the method of payment. This second contract arose out of and related to the same transaction as the first and would therefore be viewed as part of it.[1] Under such circumstances there is no necessity to be concerned with new consideration because it is provided by the mutual promises of the parties in connection with the entire transaction.[2]

1. "Where two or more written instruments are executed as a part of one transaction such instruments should, when possible, be construed together." Strike v. White, 91 Utah 170, 63 P. 2d 600 (1936); Freedland v. Greco, 45 Cal.2d 462, 289 P.2d 463 (1955).
2. Davis v. City of Okmulgee, 174 Okl. 429, 50 P.2d 315 (1935).

A little different situation exists with respect to the next contract the parties executed, which is the one upon which judgment was granted. On March 30, 1957, two weeks after the making of the second contract, but still before there had been any *transfer of the property*, the Real Estate Exchange and defendant W. R. Rucker entered into a third contract relating to the commission as follows:

> "This commission *agreement supersedes and replaces any other agreement whatsoever* in regard to the commission that is to be paid on the sale of the Shady Lane Motel, home and fourplex owned by Mr. W. R. Rucker.
>
> "We the undersigned Real Estate Exchange agree to accept as full payment and I the undersigned W. R. Rucker agree to pay a cash commission of $3,500.00 to said Real Estate Exchange.
>
> "In mutual agreement whereof we have signed this agreement this 30 day of March 1957.
>
> "[Signatures]"

About two months later, Real Estate Exchange brought suit to recover the $3,500 provided for in this third agreement. That action was later dismissed without prejudice. This account, together with others, was assigned to the plaintiff Cheney, who brought the instant suit, in which he did not limit his claim to the $3,500, but asked for the full 5% of the value of the property on the basis of the earnest money agreement, amounting to $4,750

In considering the soundness of the trial court's conclusion and judgment that the third contract was valid, certain cardinal rules must be kept in mind: that the judgment is endowed with a presumption of validity; that the party attacking it has the burden of affirmatively showing that it is in error; and that the evidence and all inferences that fairly and reasonably may be drawn therefrom must be viewed in the light most favorable to it.[3]

It is fundamental that where parties have rights under an existing contract they have exactly the same power to renegotiate terms or to waive such rights as they had to make the contract in the first place. As stated by Justice Wade for this court in Davis v. Payne & Day, Inc.:[4]

> "It is a well-established rule of law that parties to a written contract may modify, waive, or make new terms * * *."

And this was held to be so notwithstanding terms in that contract designed to hamper such freedom. (Citing authorities.)

---

3. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

4. 10 Utah 2d 53, 348 P.2d 337 (1960).

■ There may have been some merit in plaintiff's contention that he was entitled to rescind the third contract and sue on the earnest money agreement if the trial court had believed that the third contract was conditioned upon immediate performance.[5] But there is nothing in the wording of that contract expressly so stating; and the trial court did not believe Mr. Cheney's testimony to that effect, as was its prerogative.[6]

■ In the absence of express language in the contract making the payment of the $3,500 within a particular time a condition to its validity, it was entirely proper for the trial court to look at the evidence relating to the background and circumstances to determine what was intended in that regard and whether the agreement to accept $3,500 in cash was supported by some new consideration, as it concededly must be.[7] In doing so it could reasonably regard the evidence as showing adequate consideration and as sustaining the view that the parties intended the third contract to replace the prior commission agreements.

■ This third contract was entered into before any commission had become due because there had been no "transfer of the property" as the earnest money agreement required. Further, it is apparent that there was at least some uncertainty as to whether the trade of the Ruckers' property to the Nielsens had been developed into a binding transaction. This was not in fact determined until disputes between them were resolved by the final termination of a lawsuit many months later.[8] In addition, Real Estate Exchange had agreed to accept the broker's fee in payments of $200.00 per month extending over a period of two years. They were not to begin until 30 days after Ruckers took possession of the dairy farm, which had not occurred.

In view of those uncertainties, the Real Estate Exchange could very well have regarded this third contract, which gave it a definite promise of $3,500 in a lump sum, as more desirable than the claims it theretofore had. It certainly must have thought so, otherwise it would not have entered

5. See 1 Am.Jur.2d pp. 344–46; also 15 C.J.S. Compromise and Settlement § 46, p. 769.
6. Page v. Federal Security Ins. Co., 8 Utah 2d 226, 332 P.2d 666 (1958).
7. See: Bamberger Co. v. Certified Productions, 88 Utah 194, 48 P.2d 489 (1935); Nordfors v. Knight, 90 Utah 114, 60 P.2d 1115 (1936); and 12 Am. Jur. p. 988.
8. Nielsen v. Rucker, 8 Utah 2d 302, 33 P.2d 1067 (1959); that settlement of dispute provides consideration, see

Browning v. Equitable Life Assur. Soc. of United States, 94 Utah 532, 72 P.2d 1060 (1937); State for Use and Benefit of McBride v. Campbell Bldg. Co., et al., 94 Utah 326, 77 P.2d 341 (1938); Ralph A. Badger & Co. v. Fidelity Bldg. and Loan Ass'n, 94 Utah 97, 75 P.2d 669 (1938); Ashton v. Skeen, 85 Utah 489, 39 P.2d 1073 (1935); Gray v. Bullen, 50 Utah 270, 167 P. 683 (1917); Smoot v. Checketts, 41 Utah 211, 125 P. 412 (1912).

into such a contract. It is also true that the new agreement bound the Ruckers to a different obligation and one which would probably be more burdensome to them. Thus, there is no difficulty to be encountered in finding this new contract a benefit to the Real Estate Exchange and a detriment to the defendant. This provides adequate new consideration for this third agreement and makes it binding on both.[9]

Since this third contract was valid at the time it was made, the question which must be confronted and answered is this: What justification is there for the plaintiff, assignee of Real Estate Exchange, to rescind it and go back to the original earnest money agreement? We think the trial court correctly concluded that there was none. It was not at all unreasonable for it to suppose that if the parties had intended that this third agreement should be valid only if the $3,500 was paid immediately, or within some particular time, they would have said so. It is of especial significance that they did not say so; and that the agreement did not make *payment* a condition to its validity, but plainly indicates that it was the *"agreement* * * * to pay a cash

commission of $3,500 * * *" which was intended to "supersede and replace any other agreement whatsoever." The view of the trial court that the Real Estate Exchange accepted this *agreement* to pay a lump sum, rather than any requirement of immediate payment, in lieu of its prior claims, is not unreasonable in the light of the evidence, nor is the view that the acceptance of such an *agreement* constitutes an accord and satisfaction.[10]

That the parties intended the new contract to be unconditionally binding upon them and to supplant their prior agreements is persuasively supported by the fact that the Real Estate Exchange and its attorney regarded and treated the new contract as valid when it brought suit for the $3,500 based on it. If the understanding had been that the new agreement was to be conditioned upon payment by the Ruckers of that amount in cash forthwith or within any set time, it is only logical that the Real Estate Exchange would have repudiated the new contract because of the failure of payment, and would have claimed the full 5%, or $4,750, instead of $3,500 as it did. This

9. Williams v. Peterson, 86 Utah 526, 46 P.2d 674 (1935); see also: Allen v. Rose Park Pharmacy, 120 Utah 608, 237 P. 2d 823 (1951); Latimer v. Holladay, 103 Utah 152, 134 P.2d 183 (1943); Utah Nat. Bank of Salt Lake City v. Nelson, 38 Utah 169, 111 P. 907 (1910).

10. A distinction is sometimes made between situations where *payment or performance* is a condition to the accord

and satisfaction, and where the *new promise* is accepted as the accord and satisfaction. See 1 Am.Jur.2d 1. 347 and authorities therein cited; see also 15 C.J.S. Compromise and Settlement § 46, p. 769; Oholson v. Steinhauser, 218 Or. 532, 315 P.2d 136, 346 P.2d 87 (1959); and French v. Commercial Credit Co., 99 Colo. 447, 64 P.2d 127 (1936).

---

court stated in the case of Jenkins v. Jensen, et al.:[11] "Where the language used by the parties to a contract is indefinite * * * the practical construction [given by] the parties themselves is entitled to great, if not controlling, influence."

It is elementary that plaintiff Cheney, as assignee of Real Estate Exchange, could have nothing more than his assignor and is bound by any waiver, relinquishment or change of its rights which had occurred by virtue of its execution of the new agreement.

Plaintiff also raises the procedural point that since defendants did not plead the subsequent agreement as an affirmative defense, they should not have been permitted to rely thereon. It is true, as plaintiff insists, that Rule 8(c), U.R.C.P., requires that affirmative defenses be pleaded. It is a good rule whose purpose is to have the issues to be tried clearly framed. But it is not the only rule in the book of Rules of Civil Procedure. They must all be looked to in the light of their even more fundamental purpose of liberalizing both pleading and procedure to the end that the parties are afforded the privilege of presenting whatever legitimate contentions they have pertaining to their dispute. What they are entitled to is notice of the issues raised and an opportunity to meet them. When this is accomplished, that is all that is required.[12] Our rules provide for liberality to allow examination into and settlement of all issues bearing upon the controversy, but safeguard the rights of the other party to have a reasonable time to meet a new issue if he so requests. Rule 15(b), U.R.C.P., so states. It further allows for an amendment to conform to the proof after trial or even after judgment, and indicates that if the ends of justice so require, "failure so to amend does not affect the result of the trial of these issues." This idea is confirmed by Rule 54(c) (1), U.R.C.P.: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Although the plaintiff did object to evidence on the issue of subsequent agreement, when it was overruled, he made no request for a continuance nor did he make any representation to the court that he was taken by surprise or otherwise at a disadvantage in meeting that issue. The trial court not only did not abuse his discretion in allowing the issue to be raised and receiving the contract in evidence, but he would have failed the plain mandate of justice had he refused to do so.

Judgment affirmed. No costs awarded.

11. 24 Utah 108, 66 P. 773 (1901).

12. See Taylor v. E. M. Royle Corporation, 1 Utah 2d 175, 264 P.2d 279.

McDONOUGH and WADE, JJ., concur.

HENRIOD, Chief Justice (dissenting).

I dissent. There were three writings between the parties. The first dated March 14, 1957, was a valid contract, supported by consideration; the second, dated March 16, 1957 had to do with method of payment, which could be justified and binding, perhaps, since it simply implemented the first, with respect to mode of payment,—*not* as to the principal obligation. The third instrument in writing, dated March 30, 1957, purported to reduce the primary obligation by $1,250 if payment were made in cash instead of on protracted terms. It was loosely drawn, recited no consideration or any definite time for payment. Defendants did not respond to this or any of the other written instruments and refused to recognize either for several alleged reasons, including fraud in the inception,—and that was their defense in Nielsen v. Rucker,[1] —a position we rejected.

A suit was filed based on the third document ($3,500), but it was dismissed on motion of the plaintiff *without prejudice*, after which the present litigation was launched based on the initial earnest money agreement ($4,750). The $3,500 suit, therefore, had a status as though it never had been filed. Consequently, it was error to admit the file in that case in the instant case, and greater error to base the $3,500 judgment in the present case on the record in the former. This is particularly true, since defendants in the principal case, after insisting on and procuring admission of the file in the previous case, promptly denied liability thereunder, or under any other alleged contract. Significantly, they did not plead that they owed only $3,500. They pleaded they owed nothing.

Logically, it follows that defendants' contention that there was no obligation at all should have been the only issue in *this* case. The introduction of the file in the $3,500 lawsuit should be held to have been in error. The only matter left was the contention of the cross-appeal for $4,750 on the only clear, consideration-supported document extant in this case.

The defendants appealed the $3,500 judgment and then moved to dismiss their appeal. At that juncture, had there been no cross-appeal, the $3,500 judgment would have been affirmed. There was nothing then left for this court to determine save the merits of the cross-appeal based on the record, which clearly reflects a promise to pay $4,750, without any refutation by defendants, except by an abortive claim of fraud, which we negated in Nielsen v. Rucker, supra.

The main opinion talks of the $3,500 "agreement" and surmises that there *must*

1. 8 Utah 2d 302, 333 P.2d 1067 (1959).

have been consideration therefor, else the parties would not have signed it. The consideration is supplied by this court through conjecture and not by any showing in the record of any quid pro quo. Assuming there may have been some question as to consideration, it would have nothing to do with the erroneous admission into evidence at defendants' behest of an alleged $3,500 agreement which defendants themselves claimed to be void. Some other conclusion could have maintained, perhaps, if defendants had taken the position that the $3,500 document was binding to the exclusion of that for $4,750. But they didn't.

The main opinion talks about an accord and satisfaction. This is untenable, since both parties claimed there was no such settlement or agreement. The court presumed to make such an agreement for them over their mutual rejection of such a theory. Besides, under the Rules an accord and satisfaction must be pleaded as an affirmative defense,[2] which was not pleaded, but which was rejected by an untenable defense of fraud that allegedly vitiated not only the $3,500 claim but the two others.

Furthermore, assuming that there might be a question as to the efficacy of the $3,500 document, the only possible conclusion would be that payment should have been made within a reasonable time. Defendants made no offer to comply for 5 years, or at all, which would point up the invalidity of any such contract, which strangely enough both parties emphatically claimed to be invalid and unenforceable.

This case should be remanded with instruction to enter judgment for plaintiff for $4,750, with interest.

CALLISTER, J., concurs in the dissenting opinion of HENRIOD, C. J.

---

2. Rule 8(c) Utah Rules of Civil Procedure.