**No. 79SA309**

**Jack Kent Cadillac, Inc. v. The District Court, in and for the City and County of Denver, State of Colorado; and The Honorable Raymond Dean Jones, one of the Judges thereof; and John L. Genz and Beth Marie Genz**

(601 P.2d 626)

Decided October 9, 1979.                    Rehearing denied November 5, 1979.

Ireland, Stapleton & Pryor, P.C., James C. Ruh, Ralston H. Deffenbaugh, Jr., for petitioner.

Canges & Shaver, John H. Licht, for respondent.

*En Banc.*

JUSTICE DUBOFSKY delivered the opinion of the Court.

This is an original proceeding contesting the District Court's jurisdiction to issue a pre-judgment replevin order pursuant to C.R.C.P. 104 directing petitioner to deliver an automobile title to John and Beth Marie Genz. We issued a rule to show cause and now make that rule absolute.

Petitioner Jack Kent Cadillac, Inc. contracted to sell a 1977 Peugeot automobile to John Genz. As payment, Genz agreed to deliver a 1977 Cadillac, leased from Cenval Leasing of Colorado, to petitioner together with a bank draft for the sum needed to "pay off" the lease and liquidate the balance remaining after the trade-in value of the Cadillac had been subtracted from the Peugeot's sale price. The bank, which had loaned Genz the purchase money, was to honor the draft upon receipt of the certificate of title to the Peugeot. Thereafter Genz delivered the Cadillac and bank draft to petitioner and took possession of the Peugeot.

Petitioner, however, neither cashed the draft nor delivered the title to the bank. Instead, it initiated an action to recover possession of the Peugeot, contending that the car payment settlement form, because of a mutual mistake, understated the "pay off" owed to Cenval. The complaint was accompanied by an affidavit in replevin. Since the affidavit satisfied the requirements of C.R.C.P. 104(b), the district court issued an order directing Genz to show cause why the Peugeot should not be taken from him

and delivered to petitioner.

Genz answered, denied the alleged mistake, averred that he had fully performed the contract and requested an order directing petitioner to deliver the title to the bank. At the hearing on the order to show cause, the district court determined that petitioner was not entitled to pre-judgment possession of the Peugeot and discharged the rule.

A bench conference was then held following which the court entered several supplementary orders designed to implement a compromise agreement reached by the parties. Petitioner was directed to deliver the certificate of title to Genz' bank. In exchange the bank would honor the draft. Genz, in turn, was ordered to post a five thousand dollar surety bond. These supplementary orders had a twofold objective: delivery of the title would enable Genz to register and use the Peugeot;[1] the surety bond, on the other hand, would secure petitioner's alleged possessory and proprietary interests in the vehicle pending resolution of the underlying litigation.

Petitioner did not contest the court's authority to make such orders. However, Genz shortly thereafter filed a motion asking that they be modified. Another hearing was held at which Genz alleged that he could not afford to post a surety bond. Over petitioner's objection, the court then amended its earlier orders to permit Genz to give a personal recognizance bond. After its motion to modify the amended order was denied, petitioner brought this action under C.A.R. 21, asking that enforcement of the order be stayed pending an adjudication of its action to recover the Peugeot.

For reasons that appear below, we conclude that the district court erred when, over petitioner's objection, it ordered petitioner to deliver the certificate of title to Genz' bank.

While a district court sits as a court of general jurisdiction in an action to replevy personal property, its powers are more limited when, in a pre-judgment hearing on an order to show cause, the only issue to be decided is "which party, with reasonable probability, is entitled to possession, use and disposition of the property pending final adjudication of the claims of the parties." C.R.C.P. 104(g). Jurisdiction over the parties and the subject matter does not authorize the trial court to enter whatever remedial orders it deems necessary to adjust the equities between the parties. *See French v. Commercial Credit Co.,* 99 Colo. 447, 454, 64 P.2d 127, 130 (1936).

Rule 104 clearly contemplates that the conflicting legal and equitable claims of the parties will be fully adjudicated in a trial on the merits. The pre-judgment hearing serves a far narrower purpose. Adopted

---

[1] Under C.R.S. 1973, 42-6-106, a motor vehicle cannot be registered and licensed unless the registrant exhibits a duly executed certificate of title. If Genz had merely retained physical possession of the Peugeot, while title remained in petitioner's hands, he would not have been able to drive the vehicle on public roadways.

by this Court following the United States Supreme Court's decision in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the notice and hearing provisions of C.R.C.P. 104 were intended to ensure that a replevin defendant's constitutionally guaranteed property rights would not be jeopardized by unduly summary claim and delivery proceedings. However, this Court's ratification of a pre-judgment remedy acknowledges that summary procedures are often necessary to protect effectively a replevin plaintiff's interests in the subject property.

■ Rule 104 reconciles the demands of due process with a creditor's or claimant's competing demand for security. Subsection (c) affords a defendant notice that delivery of a specified item is claimed and provides him an opportunity to respond and show cause why it should not be taken. Subsection (d) directs the trial court to hold a hearing, receive evidence and determine which party is more probably entitled to possess and use the subject property while the underlying litigation is pending. The ambit of the court's remedial authority is explicitly delineated: it may either discharge the rule and restore the *status quo ante* or it may order the property seized and delivered to the plaintiff. If an order of possession is issued, the court, in its discretion, may require the plaintiff to furnish a bond and surety insuring the defendant against loss of property. Moreover, the defendant can keep or claim a return of the property by filing a written undertaking in an amount the court finds adequate to protect the plaintiff's interests.

■ To give a trial court conducting a Rule 104(g) hearing *carte blanche* to fashion whatever additional remedies it deems necessary to accomplish a "just result" would convert a procedure meant to secure fair but speedy pre-judgment relief into a cumbersome preview of the forthcoming trial. We hold, therefore, that a court conducting a C.R.C.P. 104(g) hearing lacks jurisdiction unilaterally to affect possessory rights in any property not brought within its purview by a duly issued order to show cause. *See* C.R.C.P. 104(b) and (c).[2] Because Genz never obtained an order directing petitioner to show cause why the certificate of title should not be taken and delivered to the bank, the trial court had no authority to divest petitioner of title to the Peugeot. The affirmative relief requested in Genz' underlying claim, delivery of the certificate to the bank, must either await an adjudication of the merits or be pursued by Genz inconformity with the procedures prescribed by C.R.C.P. 104 or C.R.C.P. 65. *See P.I.I. of Colorado v. District Court in and for the County of Adams,* 197 Colo. 239, 591 P.2d 1316 (1979).

---

[2] This does not mean the trial court was without authority to enter an order incorporating the parties' initial settlement. However, since it had no independent power to affect possessory rights in the certificate of title, the court erred when, over petitioner's objection, it modified the stipulated settlement.